**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA DE BAYAMON**

**EXHIBIT 3**

AE MEDICAL TECHNOLOGIES, INC.
p/c ELMER MIRANDA AVILES

*Demandantes*

V.

CANDELA CORPORATION
*Demandada*

CIVIL NUM. BY2025CV03071

SOBRE:

LEY 75 Sec. 278(a) 10 LPRA §278(a) et seq
LEY DE DISTRIBUCION DE P.R.
INCUMPLIIENTO DE CONTRATO

## DEMANDA ENMENDADA

AL HONORABLE TRIBUNAL:

COMPARECE AE Medical Technologies, Inc., en lo adelante (AE) por medio de su Presidente Elmer Miranda Avilés, por conducto de los abogados que suscriben, y respetuosamente expone, alega y solicita lo siguiente:

## LAS PARTES

1. Elmer Miranda Avilés es comerciante, único accionista y Presidente de AE Medical Technologies, Inc. con dirección en Carretera 152 Km. 12.6, Cedro Arriba, Naranjito, Puerto Rico 00719 y el número de teléfono es el (787) 979-0053.

2. La demandante AE Medical Technologies, Inc., en lo adelante AE, es un ente jurídico creado bajo las Leyes del Estado Libre Asociado de P.R. como corporación íntima, inscrita en el Departamento de Estado bajo el número 312869 inscrita el 22 de mayo del 2012 para los propósitos allí establecidos. Comparece representada por su Presidente y único accionista, Elmer O. Miranda Avilés.

3. Candela Corporation es una corporación organizada y existente bajo las leyes del estado de Delaware, cuyo domicilio social se encuentra en 251 Locke Drive Marlborough, MA  01752 y el número de teléfono es el 1 (508) 358-7400.

## ALEGACIONES

4. Se radica la presente causa de acción por AE y su accionista bajo la LEY 75 Sec. 278(a), 10 LPRA §278(a) Ley de Distribución de Puerto Rico, et. al. en contra de Candela para reclamar los derechos contenidos en dicha ley por violaciones al contrato de distribución exclusiva entre el Distribuidor AE y el Principal Candela.

5.    El 1 de abril de 2018, la parte demandante AE Medical, en lo sucesivo AE y, la demandada, Candela Corporation, en lo adelante Candela, firmaron un contrato de **distribución exclusiva** de productos, siendo Candela el principal y AE el distribuidor exclusivo de la línea en el Estado Libre Asociado de P.R. **Anejo 1 y Anejo 1A (Contrato de Distribución) El** contrato nunca ha sido enmendado.

6.    El 22 de enero de 2024, Candela, en ocasión de una reunión quincenal, (Bi-Weekly Meeting)," comenzó un patrón de actuaciones en contra de AE comenzando con la amenaza de terminar la exclusividad de la distribución del equipo "Nordlys" uno de los que figuraba entre los productos bajo contrato de distribución exclusiva en venta por AE en Puerto Rico.  Email corroborativo, **Anejo 2**.

7.    Habiendo comenzado el patrón al que hace referencia la alegación anterior, el 5 junio de 2024, Candela, a través del Sr. Walter Guevara, le remitió a AE un correo electrónico invitando al co-demandante Elmer Miranda Avilés Presidente de AE a una reunión para "discutir el futuro de AE" en las relacionados comerciales con Candela. **Anejo 3.**

8.    El 6 de junio de 2024, mediante correo electrónico del Sr. Walter Guevara a AE, la reunión a la que hace referencia la alegación anterior quedó señalada para el 10 de junio del 2024 y además se le informó a AE que estaría recibiendo una carta de no exclusividad de los productos que se mantenían bajo contrato existente de exclusividad. **Anejo 4**

9.    El 10 de junio de 2024, representantes de AE y Candela celebraron la reunión a través de la plataforma Microsoft Teams.  Se discutió el tema de la amenaza unilateral hecha por Candela de retirar los derechos de exclusividad del contrato de AE que se describe en la alegación #8.

10.   El 19 de junio de 2024, luego de celebrada la reunión a la que se hace referencia en la alegación #9, Candela le remitió a AE un correo electrónico informando que: "Nos moveremos a terminar nuestra relación el 1 de julio de 2024." **Anejo 5**.

11.   El mismo día 19 de junio de 2024, el Sr. Walter Guevara en representación de Candela, envió un correo electrónico a la Sra. Daniela Lira Diez (Daniela.diez@candelamedical.com), especialista en aplicaciones clínicas y demostraciones de equipos de Candela, cancelando unilateralmente la visita ya programada a Puerto Rico para los clientes de AE para dichos propósitos. **Anejo 6.**

12.   Las visitas de los asistentes en aplicaciones clínicas y demostraciones para los nuevos productos en Puerto Rico siempre se llevaron a cabo por estos a través de 17 años de contrato de exclusividad entre AE y Candela.

13. La cancelación a la que hace referencia la alegación #11, se realizó habiéndose ya concretado las visitas con los clientes de AE y coordinado los arreglos de viaje para Lira Diez, lo que obligó a AE a su vez, cancelar las visitas ya planificadas con sus clientes, afectando la imagen de AE en la industria. **Anejo 7.**

14. El 20 de junio de 2024, se llevó a cabo otra reunión virtual entre el Sr. Miranda de AE, el Sr. Walter Guevara y el Sr. Antonio Zorro de Candela sobre la notificación de Candela de cancelar unilateralmente el contrato de exclusividad con AE. En la reunión, el Sr. Miranda de AE exigió una explicación sobre las decisiones unilaterales y contrarias a la ley que habían estado siendo tomadas por Candela en clara violación al contrato de exclusividad y la relación comercial de más de 17 años con AE.

15. La reunión llevada a cabo el 20 de junio del 2024 no logró disuadir de que Candela continuara sus acciones unilateralmente ilegales en contra del derecho que por contrato de distribución exclusivo tenía AE.

16. Para dejar consignado lo ocurrido durante la reunión virtual del 20 de junio del 2024, el Sr. Miranda de AE envió una carta a Candela resumiendo lo discutido, carta que nunca recibió respuesta. **Anejo 8.**

17. A pesar de que no contestaron la carta a la que hace referencia al alegación #16, al día siguiente, o sea, el día 21 de junio de 2024, la socia administradora de ABA, principal cliente de AE y con quien mediaba un contrato de servicios directamente con AE para los equipos y productos de Candela en Puerto Rico, llamó al Sr. Miranda de AE informando que el Sr. Guevara de Candela se había comunicado con ellos e informado que al 1ero de julio del 2024 Candela cesaba las relaciones comerciales con AE. O sea, ejecutaron los actos que fueron expresados durante la reunión virtual, del día anterior. La socia administradora de ABA le requirió al Sr. Miranda una reunión virtual con urgencia, la que se coordinó y se realizó por teleconferencia el 25 de junio del 2024. En la reunión por teleconferencia del 25 de junio del 2024, participaron la propietaria administrativa de ABA y la persona responsable de asuntos generales de ABA con sede en Estados Unidos y el Sr Miranda de AE.

18. Durante la reunión a la que hace referencia la alegación anterior los representantes de ABA corroboraron lo adelantado, o sea, que el Sr. Guevara de Candela se había comunicado con ellos e informado que efectivamente al 1ero de julio del 2024 Candela cesaba las relaciones comerciales con AE. Esta llamada a uno de los clientes de AE se hizo por Candela a las espaldas de AE, en violación al contrato de exclusividad.

19. Para la fecha en que se realizó la llamada a la que hace referencia la alegación anterior, entre AE y ABA existía un contrato de servicios para los equipos fuera de garantía, lo que provocó inquietud en ABA puesto que lo expresado por Candela podría repercutir en sus negocios ante la clara interferencia torticera. **Anejo 9.**

20. Al Candela cancelar unilateralmente los acuerdos contractuales de distribución exclusiva con AE y querer imponerle a AE una cuota de ventas contraria a lo dispuesto en la sección 278 a1(c) de la referida Ley Núm. 75 del 24 de junio de 1964, Candela violó y contravino lo dispuesto en la Ley Núm. 75 del 24 de junio de 1964,

sección 278(a), 10 LPRA §278(a), Ley de Distribución de Puerto Rico, actuando bajo las consideraciones expresamente prohibidas.

21.  Ante los actos ilegales de Candela, AE radicó contra Candela en la Corte Federal en Puerto Rico un Injunction y una demanda bajo la Ley Núm. 75 del 24 de junio de 1964, sección 278(a), 10 LPRA §278(a), de la Ley de Distribución de Puerto Rico y, además, por interferencia torticera al haber intervenido con el contrato existente entre ABA y AE.

22.  En la Corte Federal, las partes hicieron una tregua para evitar la vista de Injunction y se aceptó por Candela reconocer el contrato de Distribución vigente hasta que un Tribunal entendiera en el asunto.  Para ello se radicó una Moción el 9 de julio del 2024 por las partes que se explica por sí sola.  **Anejo 10.**

23.  Posterior al acuerdo para evitar el Injunction, Candela radicó una moción de Sentencia Sumaria por falta de especificidad en cuanto a las alegaciones bajo la Ley 75, supra, habiendo recaído una Sentencia de desestimación sin perjuicio en la cual el Tribunal Federal expresó que AE tendría que radicar nuevamente la demanda para ser considerada.  En cuanto a las alegaciones por Interferencia Torticera, la Corte Federal determinó su desestimación con perjuicio, decisión que por los altos costos que ello representa, no se prosiguió en alzada ante el Circuito Federal.  **Anejo 11.**

## INCUMPLIIENTO A LA LEY 75, SUPRA, LUEGO DEL 9 DE JULIO DEL 2024

24.  A pesar del acuerdo al que hace referencia el Anejo 10, alegación #22, el 13 de agosto y 20 de agosto del 2024, Candela insistió en continuar querendo imponerle a AE una cuota de $500,000.00, habiendo sido copiado precisamente el Lic. Robert Blood, Executive Vicepresident, Chief Legal Officer and General Counsel de Candela Medical quien conocía de los efectos de la Ley 75, supra. **Anejo 12.**

25.  A pesar del acuerdo al que hace referencia el Anejo 10, alegación #22, y haberse cancelado las visitas con los clientes de AE en junio del 2024, Candela continuó entorpeciendo e insistiendo en no cooperar para proveer asistencia a los clientes de AE, teniendo el Sr. Miranda que hacer gestiones directamente con el Sr. David Rubio, de Candela Madrid para realizar las aplicaciones clínicas y demostraciones del Nordys y Matrix-Pro, primero de forma virtual ante la necesidad urgente de la Dra. Marrero, una de las clientes de AE y, posteriormente, de forma presencial viniendo a Puerto Rico con todo los gastos pagos por AE. **Anejo 13**.

26.  El Sr. Miranda a su vez tuvo que explicarle a la Dra. Marrero que ante la negatoria de Candela de proveer cooperación en las aplicaciones clínicas que había estado solicitando, AE había contactado directamente al Sr. Rubio de Candela España para que pudiera proveerle la ayuda necesaria. Ver Anejo 13.

27. Posteriormente, el día 14 de octubre de 2024 (6:23PM) AE recibió un email de Robert Fielitz, Vice-President of Distributor Operations Candela Medical, reiterando su negatoria de proveer apoyo a AE en las aplicaciones clínicas pendientes, copiando a la Dra. Marrero, cliente de AE Medical, sobre asuntos internos entre AE y Candela. **Anejo 14**.

28. El 15 de octubre del 2024, al día siguiente de haberse recibido el correo electrónico al que hace referencia la alegación #27, el Sr. Miranda llamó a la Dra. Marrero para disculparse del email enviado por Robert Fielitz y asegurándole que ya el había actuado para que pudiera recibir de Candela Madrid el apoyo que venía esperando por mucho tiempo. La Dra. Marrero agradeció al Sr. Miranda sus gestiones y expresó y catalogó el correo recibido de Fielitz como una falta de respeto y profesionalismo de parte de Candela hacia AE y sus clientes.

29. Para reiterar el patrón de incumplimientos e intención de dejar sin efecto unilateralmente el contrato de exclusividad, Candela ha dejado de enviar los "leads" o sea referidos de las llamadas de personas interesadas en los productos de Candela que se comunican directamente con el manufacturero y a los que AE da seguimiento para venta en Puerto Rico. **Anejo 15**.

30. La práctica a la que hace referencia la alegación #29, comenzó desde principios del año 2024 luego de que Candela comenzó a actuar unilateral e ilegalmente en contra del contrato de exclusividad con AE con amenazas que finalmente terminó cumpliendo.

31. La práctica a la que hace referencia las alegaciones #29 y #30 se incrementaron luego de que Candela terminara unilateralmente el contrato con AE y se radicara la demanda en la Corte Federal.

32. El patrón aludido en las alegaciones 29, 30 y 31 de esta demanda se ha extendido al grado de que de enero del año 2025 a marzo del año 2025 solo se han recibido 4 referidos y, desde marzo del año 2025 al momento de esta demanda, no se ha referido ninguno otro. **Anejo 15**.

33. Las actuaciones de la 29 a la 32 de las alegaciones de esta demanda, corroboran no solo el incumplimiento ante la falta de cooperación de Candela y la imposición de cuotas para con AE, sino también el entorpecimiento sobre las ventas en Puerto Rico de su concesionario exclusivo AE para hacer lucir a AE vendiendo menos productos y, con ello, bajar la plusvalía del negocio de AE artificialmente y creando una crisis ficticia.

34. Y si como si con todo lo antes no fuese suficiente, en septiembre del 2024 Candela se negó a entregarle una carta de exclusividad de distribución que fue requerida por Popular Auto para poder financiar un equipo que había vendido AE. Se le tuvo que exigir a sus representantes legales en Puerto Rico intervenir en el asunto y eliminar la referencia a una acción judicial, para que, finalmente Candela remitiera una carta que no firmó

ninguno de los ejecutivos y, por suerte, el Banco Popular aceptó.  Esto es un claro mensaje de que Candela se resistía respetar el acuerdo contractual y cumplir con la Ley 75, supra, a pesar de conocer sus efectos en Puerto Rico, según se desprende de los correos electrónicos cursados a esos efectos. **Anejo 16.**

35. AE Medical en todo momento ha cumplido sus obligaciones y realizado los mejores esfuerzos para satisfacer y promover y exceder la cantidad de **$177,000.00** en compras de productos de Candela, conforme se acordó en el Annexo 2.2 de la sección 2.2 del Contrato, habiendo comprado desde entonces al manufacturero por ventas de sus productos:

2019- $607,729.39

2020- $395,026.11

2021- $697,742.18

2022- $1,094,875.65

2023- $907,887.35

2024- $359,487.70

36. Los acuerdos a los que hace referencia la alegación #35 no han sido alterados desde el 2018 cuando se firmó el contrato entre AE y Candela.

37. Candela no podía exigir más de la cuota establecida de $177,000.00 conforme acordado entre las partes.

38. Por otro lado, Candela incurrió en un abuso continuo verbal y hostigamiento irrespetuoso para con su distribuidor en Puerto Rico lo que provocó que AE Medical se haya visto forzada a comunicarse mediante vía escrita. No obstante, las respuestas escritas de Candela corroboran el hostigamiento sobre AE.

39. Candela directamente ha promovido un impacto negativo en la venta de sus productos en Puerto Rico. Como consecuencia de la falta de respuestas a asuntos importantes para la venta y garantía; debido a los defectos reiterados en sus productos; la tardanza extrema para el reemplazo de ordenes en garantía y en piezas regulares para reparaciones y para el inventario, entre otros provocan daños sustanciales a AE. Además, la interferencia directa con clientes a espaldas de AE y las quejas de los mejores clientes de AE, todo ello constituye un incumplimiento y una violación del deber implícito de buena fe y trato justo por parte de Candela.

40. Candela ha violado la Sección 3.5.7 del contrato al negarle a AE Medical continuar enviando, como siempre fue la costumbre, el personal necesario capacitado directamente de Candela para adiestrar a personal en los equipos vendidos, servicio pagado por AE a pesar de que al comienzo del contrato con AE, Candela cubría como parte de la venta de sus productos, a personal técnico adiestrado para viajar a Puerto Rico totalmente libre de cargos.

41.  Como antes alegado, en junio del 2024, Candela de forma temeraria y en perjuicio de los intereses de AE canceló un viaje ya programado a Puerto Rico de una de sus técnicas de adiestramiento, la Sra. Lira Diez, a pesar de que AE ya había programado y coordinado visitas con distintos clientes e incurrido en gastos de pasaje por la cantidad de $1,150.32 la cual aún adeuda Candela a AE.

42.  Candela para defenderse de su incumplimiento y actuación de mala fe de cancelar el viaje al que hace referencia la alegación #41, temerariamente utiliza como absurda excusa que AE, a pesar de que AE pagó pasaje aéreo y estadía del hotel en aquel momento, quedaba por reembolsarle a la técnica de Candela Lira Diez la **suma ridícula** de **$81.58** utilizados para el pago de Ubers y exceso de maleta del viaje previo.  Se alega afirmativamente que los $81.58 fueron reembolsados tan pronto a AE recibió los recibos.

43.  Candela, en evidente represalia por los reclamos que en derecho tiene AE, suspende y entorpece unilateralmente el apoyo técnico a AE para los adiestramientos, lo que es una clara violación al contrato Sección 3.5.7 y a su deber de buena fe, para promover efectivamente los equipos, por lo cual constituyen sus acciones y omisiones en un impedimento para poder exigirle a AE total promoción y venta de los productos.

44.  Candela ha afectado las ventas y por tanto perjudicado a AE, ante la ausencia de respuestas a clientes, defectos repetidos en sus productos y tardanzas injustificadas para el reemplazo de piezas bajo garantía, teniendo AE que utilizar su inventario en piezas disponibles para la venta y poder cumplir con piezas en garantía, lo que conlleva que el inventario de AE se afecte para vender la pieza que no esté ya en garantía.

45.  Los servicios de AE siempre han sido excelentes y expeditos, manteniendo inventario cumpliendo con respuestas rápidas y alternativas para sus clientes, aún y a pesar de los atrasos injustificados producidos por Candela en envío de los productos. La compra por AE de piezas para servicio y mantenimiento de equipos fueron por años como sigue: 2019- $175,129.39; 2020; $103,786.11 (durante la Pandemia); 2021- $267,752.28; 2022- $546,045.65; 2023- $386,987.34; 2024 $196,487.70. Por tanto, los atrasos que pueda haber habido en servicio por AE son por fallas de manufactura, falta de apoyo a su distribuidor, falta de respuestas, tardanzas irrazonables en el envío de los productos, entre otros, toda responsabilidad exclusiva de Candela.

46.  Adicional a la falta de cooperación de Candela para las ventas de equipos por AE, Candela de mala fe cambió la lista de precios de un equipo en manufactura que AE estaba promocionando y, como resultado cuenta con dos clientes para la compra de este.  En la lista de precio recibida por AE, en enero del 2025 el equipo VBeam-Pro tenía un costo de $85,000.00 para el distribuidor y, luego, 4 meses luego, en mayo 2025 aumentaron irrazonablemente a $120,000.00.  Además, se le solicitó a Candela información adicional de las especificaciones y configuraciones del equipo, entre otras, para poder promocionar el nuevo equipo y, al presente no se ha contestado, lo que implica mala fe y claro incumplimiento por Candela.  **Anejo 17.**

47. El mejor cliente de producto Candela en Puerto Rico y en el Caribe, **ABA**, sostiene todos los incumplimientos señalados en esta demanda por AE a Candela, al extremo que tuvo que remitir una carta a Candela el 10 de julio del 2025 increpándoles la falta de cooperación y los continuos y reiterados defectos en las piezas de reemplazo en garantía.  Dado la importancia de dicha carta copiada por el cliente a AE, de la que no se tiene evidencia de haberse contestado, el contenido de esta se incorpora al cuerpo de esta demanda enmendada y se acompaña como **Anejo 18**

"Saludos Sr. Zorro:

Reciba un cordial saludo. Por medio de la presente, deseamos compartir nuestra creciente preocupación respecto al desempeño del equipo Candela. En el último año, hemos observado una alta frecuencia de fallas específicamente en los cabezales láser ND Yag, lo cual ha impactado negativamente nuestras operaciones.

Adjuntamos una tabla que resume únicamente los arreglos realizados al componente ND Yag durante el último año. Esta información no incluye otras reparaciones o mantenimientos del equipo, ya que nuestro interés en este momento es abordar exclusivamente la alta frecuencia de fallos en los cabezales láser. Como se puede observar, la mayoría de las averías están relacionadas con filtraciones o algún tipo de fuga.

Esta situación ha generado un incremento considerable en los costos de mantenimiento, al punto de que la compañía percibe el equipo como una fuente de gastos excesivos. Actualmente, nos vemos en la necesidad de operar con una máquina adicional en cada una de nuestras localidades para mitigar el impacto que ocasiona la recurrencia de estas fallas.

Aunque contamos con el valioso apoyo del representante local de Candela, la demora en la entrega de piezas prolonga el tiempo fuera de servicio de los equipos, lo que repercute directamente en nuestro servicio al cliente y en nuestras ganancias.

Por ello, solicitamos respetuosamente que Candela realice una evaluación de manufactura que nos permita entender la raíz de estas averías y conocer si se están tomando medidas para mejorar la calidad o confiabilidad del equipo. Nuestro compromiso con la excelencia nos impulsa a buscar una solución conjunta que beneficie a ambas partes.

Agradecemos de antemano su pronta atención a este asunto y quedamos atentos a su respuesta.

*Sandra Bibiloni*
Aba Depilación Láser "



48. Se alega afirmativamente que una vez AE vende un equipo a un tercero y haya vencido la garantía original de 1 año, no tiene control si el mismo se alquila se vende y a quien dicho adquiriente, compre sus productos.

49. La Ley 75 de Puerto Rico de 24 de junio de 1964 10 L.P.R.A. 278 et. Seq regula los contratos de distribución y prohíbe que un principal menoscabe, termine o se niegue a renovar la relación con un distribuidor sin justa causa.

50. Las actuaciones contrarias a la Ley 75 ha provoca perdida de oportunidades de venta para AE que se traducen en daños económicos y lesión a la reputación de AE en el mercado.

51. En este caso, por tanto, Candela:

a.   Incumplió y menoscabó el acuerdo contractual que mantenía por 17 años con AE, al dejar sin efecto el contrato de exclusividad unilateralmente en clara violación con las disposiciones de La Ley 75 de 24 de junio de 1964 10 L.P.R.A. 278 et. Seq. creada parala protección de los suplidores en las relaciones comerciales y prohibiendo al principal o fabricante menoscabar las contrataciones de exclusividad con sus distribuidores.  (10 LPRA 278(a));

b.   Impuso y continuó imponiendo luego de un acuerdo, una cuota de $500,000.00 a AE, contrario a la Ley, supra, que prohíbe dejar sin efecto un contrato para imponer cuotas no contempladas en el contrato de exclusividad firmado entre las partes;

c.   Entorpece las ventas con la falta de cooperación y envío de los referidos "leads" recibidos mediante llamadas a sus oficinas principales directamente como había sido la costumbre por 17 años, contrario al contrato de exclusividad que provee para la cooperación de las partes y venta de equipos en Puerto Rico;

d.   Entorpece la programación con clientes de AE de las personas que siempre brindó cooperación en las aplicaciones clínicas y demostraciones de productos, obligando a AE a tener que recurrir a Candela Madrid para cumplir con los clientes, y demorando injustificadamente proveer información para la venta de equipos requeridos por clientes, actuaciones de Candela en abierto menoscabo a la buena imagen de AE en el mercado y afectándole;

e.   Al crear una crisis económica para conseguir dejar sin efecto el contrato de exclusividad artificialmente creando una justa causa que solo le es atribuible a las actuaciones de Candela.

f.   Al darle la espalda al mejor cliente de AE y Candela en Puerto Rico, ABA, lo que implica que se abstengan de continuar comprando productos Candela que merma con ello las ganancias de AE.

## RECLAMACION EN DAÑOS

52. Candela, al haber violado las disposiciones de la Ley 75, supra, y el contrato antes señaladas viene obligada a pagar:

a.   El costo del pago de un local donde haya espacio de almacenamiento para equipos y partes y accesorios (entre ellos criógenos) por un valor de $600.00 mensual

b.  El costo de las partes, piezas y accesorios que tiene en existencia AE en inventario ascendente a aproximadamente $225,000.00

c.  El costo por la plusvalía por 17 años de relación comercial exclusiva,

d.  La cantidad de $ 2,014,585.08 correspondiente a 5 años del monto obtenido en la distribución de los productos por AE

53.  AE reclama además en incumplimiento del contrato y por daños y perjuicios, la cantidad de $1,150.32 de pasajes cancelados, según descrito en la alegación #41 y solicita que se le imponga temeridad a Candela al haber obligado a AE a radicar una nueva reclamación en lugar de llegar a un acuerdo extrajudicial, lo que implica continuar perjudicando las ventas para AE e incurrir en honorarios de abogados y costos de litigio.

POR TODO LO CUAL, respetuosamente se solicita de este Honorable Tribunal declare con lugar la demanda en todas sus alegaciones y dicte Sentencia de conformidad por la suma de $2,239,585.08, los meses de alquiler desde el 1ero de julio del 2024, hasta que se dicte Sentencia, la suma de $1,150.32 por pago de cancelación de pasajes, intereses legales, más las costas, gastos y una suma no menor de $25,000.00 en honorarios de abogados.

En San Juan, Puerto Rico, hoy día 12 de julio del 2025.

**f/RUBÉN T. NIGAGLIONI MIGNUCCI**
RUA 3065
**NIGAGLIONI LAW OFFICES, PSC**
P. O. BOX 9023865
SAN JUAN, PUERTO RICO 00902-3865
TEL. (787)765-9966 FAX (787)751-2520
**EMAIL:  RTN@NIGAGLIONILAW.COM**



**BLANCA E. AGRAIT LLADO, RUA #10498**
**P.O. BOX 195193**
**SAN JUAN, PUERTO RICO  00919-5193**
**TEL. 787 753-7130**
**FAX 787 763-1594**
**Correo Electrónico** ball@agraitlaw.com
**f/BLANCA E. AGRAIT LLADO**
**RUA #10498**

**ANEJOS 1 (1A)-18**

# ANEJO 1

## DISTRIBUTORSHIP AGREEMENT

This Distributorship Agreement (the "**Agreement**") is effective as of April 1, 2018 (the "**Effective Date**") and is between Candela Corporation, a US corporation organized and existing under the laws of the state of Delaware and having a place of business located at 530 Boston Post Road, Wayland, Massachusetts 01778, USA ("**Candela**"), and AE Medical Technologies, Inc., a company organized and existing under the laws of Puerto Rico and having a place of business located at PR 152 KM 12.6, Cedro Arriba, Naranjito PR 00719 ("**Distributor**"). Each of Candela and Distributor may be referred to herein as a "**Party**" and collectively they may be referred to as the "**Parties**".

## WITNESSETH:

WHEREAS, Candela is interested in appointing Distributor as a distributor in Puerto Rico (the "**Territory**") for the promotion, marketing and sale of the Products, including the Devices, Applicators, Spare Parts, Consumables and Accessories (as such terms are defined in Section 1.1) to medical institutions, physicians, physiotherapists, cosmeticians, aestheticians and beauticians, and/or business owners (the "**Market**");

WHEREAS, Distributor is interested in being appointed as a distributor of the Products in the Territory for the Market, and Distributor declares that it possesses the necessary expertise, personnel, resources and skills to promote, market and sell the Products in the Territory, and to provide service and clinical trials for such Products in the Territory; and

WHEREAS, the Parties wish to set forth herein the terms and conditions which shall govern their relationship.

NOW, THEREFORE, in consideration of the foregoing and of the promises, agreements, representations, warranties, and covenants herein contained, the Parties hereby agree as follows:



1.  **Appointment**

1.1  Appointment: Subject to the terms and conditions of this Agreement, Candela hereby appoints Distributor as Candela's distributor for the Market in the Territory for Candela's Products as detailed in Annex 1.1 attached to this Agreement (respectively "**Devices**", "**Applicators**", "**Spare Parts**", "**Consumables**", and "**Accessories**" and collectively "**Products**") and for the provision of related Services (defined in Section 3.11). Candela Products may include any and all product families marketed by Candela. Candela shall be entitled to change the Products detailed in Annex 1.1 at any time(s) by providing Distributor with a ninety (90) day prior written notice of such change(s). It is acknowledged and agreed by the Parties that when "selling", "sell" or "sale" are referenced or indicated herein with respect to Products, this terminology is not applicable to the software contained within the Products. Candela provides to Distributor a limited, revocable, non-assignable, non-transferable right and license to sublicense the software, solely for the Market in the Territory as part of the Products, to its customers; provided that the following minimum terms, the acceptance of which Distributor shall be solely responsible for ensuring, are conveyed to and agreed to by each of Distributor's customers:

> i. The customer shall use only one copy of the software solely in conjunction with the Product purchased from Distributor and pursuant to the Candela end user manual associated with such Product.
>
> ii. The software contained in the Product(s) is confidential and proprietary information of Candela and/or its licensors.
>
> iii. Customer will not attempt to decompile Candela software.

1.2  Exclusivity: Distributor's appointment as set forth above shall be on an exclusive basis for the designated Market in the Territory.

1.3    <u>Limitations on Sales</u>: Distributor shall not market Products to or solicit any third party outside the Territory or outside of the Market in the Territory, whether directly or indirectly. Any such activity constitutes grounds for immediate termination of this Agreement by Candela.

1.4    <u>Other Rights</u>: It is hereby acknowledged and agreed that in countries or territories not included in the Territory, and/or in markets not included in the Market, other distributors, resellers or agents may be granted rights to sell the Products which are not granted to Distributor. At times, this may cause questions as to the classification of a certain customer in the Market or other markets. In the event of any such question(s) about customers. Candela reserves the right to determine if a customer is in the Market or in another market and whether such customer is within the Territory or not, and all such determinations shall be final and binding upon Distributor.

2.    **The Products**

2.1    <u>Resale</u>: The appointment of Distributor is conditioned upon the compliance of Distributor with the terms of this Agreement, including the timely supply of the Services to existing and new customers in the Territory as detailed in Section 3.11 and <u>Annex 3.11</u> attached to this Agreement. During the Term (defined in Section 10.1). Candela shall sell to Distributor, and Distributor shall purchase from Candela, such quantities of the Products as are ordered by Distributor for resale to third parties in the Territory and for the Market. Distributor is not authorized to, and may not, make any representations on behalf of Candela nor bind it in any way to any obligation, and shall not take any action detrimental to the reputation or goodwill of the Products or Candela.

2.2    <u>Purchase Minimums</u>: Set forth in <u>Annex 2.2</u> attached to this Agreement are the mutually agreed quarterly purchase minimums for Devices (the "**Purchase Minimums**"). In the event that Distributor fails to purchase the total Purchase Minimums for any calendar quarter, then Candela shall be entitled, in its sole discretion to: (a) terminate this Agreement with a thirty (30) day prior written notice; (b) terminate Distributor's rights to sell any category or categories of Products; (c) change, reduce or eliminate the scope of the Territory or Market in which Distributor is entitled to distribute the Products; (d) terminate any exclusive distribution rights previously granted to Distributor; and/or (e) increase the price by up to five percent (5%) for all Products, Spare Parts, Consumables and Accessories purchased by Distributor during the calendar quarter in which Distributor failed to comply with the Purchase Minimums. The Parties agree that throughout the Term of this Agreement and any extension thereof in the event Candela is of the opinion that Distributor shall not be capable of meeting the Purchase Minimums, Candela shall be entitled to view such anticipated failure as a material breach of this Agreement, and shall be entitled to choose from any of the options specified in this Section 2.2 as its remedy for such expected noncompliance. The Parties agree that the remedies provided for herein are not intended to be exclusive remedies in connection with such a breach and shall not derogate from any other rights and remedies available to Candela.

2.3    <u>Competing Products or Services</u>: Distributor agrees not to promote, market or sell in any way any product or other item which may be competitive with or substitute for any of the Products or Services during the Term of this Agreement and for six (6) months thereafter. Distributor represents that it does not have, nor during the Term of this Agreement will it have, any conflict of interest or otherwise be subject to any restriction or third-party agreement that would interfere with or prevent Distributor from representing the Products and/or providing the Services in the Territory faithfully and diligently, or in any way that may conflict with or contradict any of its undertakings under this Agreement.

2.4    <u>Labeling</u>: All Products sold by Distributor must bear the name and markings of Candela and shall be labeled at Candela's facilities. Additional markings by Distributor to which Candela has consented in advance and in writing shall be provided to Candela by Distributor and labeled at Candela's facilities. Distributor shall be responsible for the compliance of all Product labeling with all applicable laws and regulations relating to the labeling of the Products in the Territory.

3.   **Distributor's Responsibilities and Agreements**

3.1   Sale and Expertise: Distributor shall use its best efforts to introduce, promote and obtain orders for the Products, and to meet the Purchase Minimums. Distributor agrees that as of the Effective Date hereof and for the entire Term, it shall have all the necessary resources, facilities, personnel, experience, skills and knowledge to perform all of its obligations hereunder.

3.2   Inventory: Distributor shall be responsible for keeping an appropriate inventory of Spare Parts, Consumables and Accessories to provide all customers in the Territory with service in accordance with the terms defined in Annex 3.11 attached to this Agreement. For such purpose, Distributor agrees to maintain the levels of inventory specified in Annex 3.2 attached to this Agreement (the "**Minimal Inventory**"). Distributor shall allocate a controlled area with appropriate inventory storage conditions, as defined by Candela and according to the labeling.

3.3   Distribution through Third Parties: As of the Effective Date and for the entire Term of this Agreement, Distributor shall refrain from having any third parties distribute the Products without Candela's prior written approval.

3.4   Professional Personnel: Distributor shall appoint and retain appropriate professional sales personnel to provide the Services and to ensure efficient performance of its obligations under this Agreement. Distributor shall maintain a headquarters office in the Territory and additional regional offices as reasonably required to provide good sales and service coverage.

3.5   Training:

3.5.1   Sales Training Course: Prior to commencing the sale of the Products, and not more than thirty (30) days after the Effective Date, Distributor agrees to have had a number of its sales personnel reasonably satisfactory to Candela complete a marketing and sales course on the Products at a location determined by Candela (the "**Sales Training Course**"). Such Sales Training Course shall be free of charge, except that Distributor shall be responsible for all travel and accommodation expenses of its sales personnel that attend the Sales Training Course. Sales personnel, who successfully complete the Sales Training Course, shall be entitled to instruct other personnel on behalf of Distributor with respect to the Products. Distributor agrees that only sales personnel who have successfully completed the Sales Training Course or received training from a certified participant in the Sales Training Course shall be entitled to sell the Products on behalf of Distributor.

3.5.2   Clinical Training Course: Prior to commencing the sale of the Products, and not more than thirty (30) days after the Effective Date, Distributor agrees to have had a number of its clinical educators reasonably satisfactory to Candela complete a training course on the clinical aspects of the Products from Candela authorized representatives (the "**Clinical Training Course**"). Following the successful completion of the Clinical Training Course, each qualified clinical educator shall receive a clinical educator certificate from Candela (the "**Clinical Certificate**"). In addition, Distributor's personnel shall attend any refresher clinical training courses and sales training courses that are given by Candela from time to time relating to the Products ("**Refresher Courses**"). Distributor agrees that only personnel who have successfully completed the Clinical Training Course and received the Clinical Certificate (a "**Certified Clinical Educator**") and that have attended Refresher Courses shall be entitled to conduct clinical education with respect to the Products.

3.5.3   Technical Training Course: Prior to commencing the sale of the Products, and not more than thirty (30) days after the Effective Date, Distributor agrees to have had a number of its service engineers reasonably satisfactory to Candela complete a course on the servicing of the Products from Candela authorized representatives (the "**Service Engineer Training Course**"). Following the successful completion of the Service Engineer Training Course, each qualified technician shall receive a service engineer certificate from Candela (the "**Technician Certificate**"). Distributor agrees that only service engineers who have successfully completed the Technical Training Course and received the Service Engineer Certificate, shall be entitled to service the Products on behalf of Distributor.

3.5.4    Courses: The Sales Training Course, the Clinical Training Course and the Service Engineer Training Course shall be collectively referred to herein as the "**Courses**". Distributor shall propose and Candela shall approve the number of attendees at each of the Courses. Candela shall determine, in its discretion, the curriculum of each of the Courses. The Courses shall be conducted in the English language, and shall take place at Candela's facilities or any other place designated by Candela.  In the event that a translator is required, then such translator shall be provided and paid for by the Distributor.

3.5.5    Refresher Courses: Unless otherwise instructed by Candela in writing, Distributor agrees to have its certified sales representatives, clinical educators and service engineers attend update / refresher courses provided by Candela upon a sixty (60) day prior written notice from Candela to Distributor. Distributor shall propose and Candela shall approve the number of attendees at each such course. Distributor acknowledges that lack of attendance of any of the certified sales representatives, clinical educators and service engineers at the above courses may lead to the revocation of their certificates and/or termination of this Agreement, in Candela's sole discretion.

3.5.6    Distributor Requests: Distributor may request Candela, in writing, to have its personnel attend additional Courses by providing Candela with not less than a thirty (30) day prior written notice. Candela shall advise Distributor on available dates subject to attendance and other considerations of Candela.

3.5.7    Course Costs: Candela shall provide all Courses free of charge. Distributor shall bear all costs and expenses of its personnel participating in the Courses, including without limitation, travel, accommodations and salary expenses. In the event that Distributor and Candela agree that any of the Courses will be held at a location proposed by Distributor, then Distributor shall pay for Candela's travel and related expenses for accommodations, transportation and food for such location(s).

3.5.8    Customer Education: Distributor agrees and will confirm to Candela that no Products are sold or used by any customer of Distributor prior to such customer successfully completing clinical guidance and education by a Certified Clinical Educator.

3.5.9    Compliance Failure: Failure of Distributor to comply with the terms of this Section 3.5 shall be deemed a material breach of the terms and conditions of this Agreement and, at the election of Candela, may cause the immediate termination of this Agreement.

3.6    Sales and Marketing Efforts: Prior to the beginning of each calendar year, Distributor shall submit to Candela for its approval, its proposed annual sales and marketing promotional plan (the "**Promotional Plan**"). The Parties agree that the Promotional Plan shall include all of Distributor's obligations specified in Annex 3.6 attached to this Agreement. Distributor shall be responsible for, and shall bear all costs in connection with creating, preparing and printing all training, promotion and marketing materials (including social media advertising and audio and visual aids) to be used by Distributor in the performance of its obligations under this Agreement (the "**Marketing Materials**"). Distributor shall provide Candela with original copies, as well as copies translated into English, of all Marketing Materials for review prior to the release of such materials. Distributor shall make all changes requested by Candela prior to the release of such Marketing Materials. Distributor agrees that all Marketing Materials shall conform to all applicable laws and regulations relevant for the distribution of the Products in the Territory. Notwithstanding the above, Distributor shall be responsible for translating all information which Distributor's customers receive from Distributor into the mandatory language required under the applicable laws, if any exists, in the Territory, including without limitation all Product labeling, marketing documentation, and user documentation. Distributor shall be responsible for verification that translated Instructions for Use (IFU) supplied to its customers are accurate and conform to the original Candela English IFU. Verification records shall be transferred to Candela promptly after its request therefore. Distributor shall use its best efforts to assist Candela in performing post-marketing activities proposed by Candela.

3.7   Modifications: Distributor shall not reverse engineer, change, copy, license to third parties or use in any manner the Products or any and all other Intellectual Property (defined in Section 8) of Candela without Candela's prior written consent. Distributor agrees to use and sell only Products authorized by Candela, including without limitation the cryogen canisters supplied by Candela. In the event that Distributor sells or otherwise distributes any Product not authorized by Candela, then Candela's warranty and service obligations for the Product shall be cancelled. Distributor shall promptly notify Candela, in writing, of any and all modifications, design changes or improvements to the Products suggested by any customer, employee or agent of Distributor (the "**Improvements**"). Candela shall have any and all right, title and interest in any such Improvements. Candela shall not be obligated to make any payment for such Improvements, except to the extent, and then only to the minimal extent, required by applicable law.

3.8   Reporting Obligations: Within fifteen (15) days after the end of each calendar quarter during the Term, Distributor will submit to Candela a quarterly report which shall include, inter alia, the following information: (i) all sales made by Distributor during such quarter sorted by Devices, Applicators, Spare Parts, Consumables and Accessories and customer type (medical specialists, beauticians, estheticians, medical spas etc.); (ii) average sale prices during the quarter of the Devices, Applicators, Spare Parts, Consumables and Accessories sold in the Territory; (iii) Distributor's inventory of Devices, Applicators, Spare Parts, Consumables and Accessories as of the end of the quarter; (iv) a list of sales and marketing events, which are expected to take place in the Territory during the next 2 quarters; (v) an updated list of all luminaries who promote Candela's Products; (vi) a proposed Promotional Plan for the next quarter in comparison to the actual Promotional Plan for the past quarter; (vii) a description of activities of competitors in the Territory and, to the extent available, a report on all competitive products sold in the Territory by each competitor; and (viii) all other information reasonably requested by Candela consistent with all laws applicable to the Territory.



3.9   Claims: Distributor undertakes to inform Candela within forty-eight (48) hours of the first time it becomes aware of any complaint or claim or any potential complaint or claim ("**Claim**") with respect to this Agreement, Candela Products or the Services without regard to the basis of such Claim. Distributor shall handle all customers' Claims with a view of securing and maintaining the goodwill of Candela, Products and Services, and shall promptly prepare a report on each Claim and submit the same to Candela for its review. Distributor shall use its best efforts to provide Candela with all relevant information with respect to each Claim, assist Candela in the resolution thereof and arrange for Candela's representatives (if so requested) to have access to the premises in which the Product related to the Claim is located. Upon Candela's request, Distributor shall perform follow-up checks on Claims and adverse events.

3.10  Product Suspension: Distributor shall immediately (and in any event, no later than forty-eight (48) hours after becoming aware) notify Candela in writing of any adverse event or unexpected result or problem encountered with or related to the Products or any actual or potential government action, investigation or inquiry related or relevant to a Product or Candela. Notification shall include the Product's serial number and name, address and communication details of the persons involved in the adverse event. If and to the extent requested by Candela, Distributor shall suspend marketing and sale of any Product, upon receipt of notice from Candela, in the exercise of its reasonable discretion, that the Product presents a safety risk or may be subject to an adverse regulatory determination. In the event of any such suspension, Candela shall have no liability to Distributor for lost profits or other damages, except for reimbursement of Distributor for amounts actually paid by Distributor to Candela with respect to such Products following the return of the Products to Candela.

3.11  Post-Sale Services: Unless otherwise agreed by the Parties in writing, Distributor shall provide existing and new customers in the Territory, with repairs, upgrades, modifications, changes, tests and maintenance services, including Candela's ServiceMax program, as follows: (i) as required and defined by Candela; or (ii) as required for good operation and safety of the Products; and (iii) as requested by the Distributor's customers (the "**Services**"). Distributor shall

support customers with site preparation and product installation and shall keep records of same. The Parties agree that failure of Distributor to comply with the terms specified in Annex 3.11 shall be deemed a material breach of the terms and conditions of this Agreement and Candela shall be entitled, at its discretion, to either: (a) terminate this Agreement with a thirty (30) day prior written notice to Distributor; or (b) provide the Services on its own or through any third party designated by Candela.

3.12 <u>Compliance with Laws</u>:  Distributor shall comply, at its sole cost and expense, with all applicable laws, regulations and standards and codes of industry or professional conduct, relevant for the performance and compliance of its obligations under this Agreement whether in the Territory or otherwise, including without limitation, those applicable to product claims, labeling, packaging, approvals, registrations, notifications, sales and marketing, advertising, warehousing, transportation, customer support, personnel training and record keeping. More specifically, Distributor shall perform the Services in compliance with all applicable federal and state laws, regulations and industry codes, including but not limited to (i) the Foreign Corrupt Practices Act of 1977, as amended, the UK Bribery Act of 2010, the UK Criminal Finances Act of 2017, the 1997 OECD Convention on Combating Bribery of Foreign Public Officials in International Business Transactions and all other applicable anti-corruption laws; (ii) federal and state anti-kickback laws and regulations; and (iii) the United States Food and Drug Administration laws, regulations and guidance, including the Federal Food, Drug and Cosmetic Act of 1938, as amended.

3.13 <u>Government and Other Relationships</u>: Distributor and its directors, officers, employees, agents and consultants hereby agree to, and Distributor agrees to ensure that all persons conducting business with or on behalf of Distributor in any form will, comply fully with the provisions of Section 3.12 hereof and not to directly or indirectly make or offer, any payment or promise to pay, or authorize payment, or offer a gift or promise to give, or authorize the giving of a financial or other advantage for the purpose of improperly obtaining or retaining a business advantage for Distributor or Candela. Candela may terminate this Agreement immediately and without penalty in the event of a violation of this Section by the Distributor and may also claim damages for such violation.

3.14 <u>Export Laws and Regulations</u>: Distributor hereby acknowledges that any Products or Services (including any associated software or other technology) provided in connection with this Agreement may be subject to United States export controls, including the Export Administration Regulations ("EAR"). When applicable, Distributor shall comply with the EAR and any other applicable export control regulations and shall not sell any Products or provide any Services to or for the use or benefit of, any intermediary or ultimate purchaser with which Candela could not deal under laws or regulations of the United States or other applicable jurisdictions. This may include, without limitation persons in or nationals of Cuba, Iran, North Korea, Sudan, Syria and the Crimea region of Ukraine. Distributor shall comply with all other laws and regulations of the United States and any other cognizant jurisdiction relating to the sale, shipment or transfer of Candela's Products.

3.15 <u>OFAC and SDNs</u>: Distributor shall not directly or indirectly, engage in any activity or transaction in relation to any United States sanctioned country that, if undertaken by a United States person, would be in violation of United States sanctions laws and regulations, including, but not limited to, the International Emergency Economic Powers Act (50 U.S.C. § 1701-1706), the provisions of related Executive Orders, sanctions administered or enforced by the United States Department of Treasury's Office of Foreign Assets Control ("OFAC") and any other regulations that may be in effect and applicable to such sanctioned countries, unless both (i) applicable authorizations are obtained or general licenses apply, and (ii) Candela has provided its prior written approval. In connection with the activities performed under or pursuant to this Agreement, Distributor shall not directly or indirectly, engage in any transaction, service or business dealing, or sign any commercial agreement, with any individual, entity, group or government agency that is on the United States list of Specially Designated Nationals ("SDNs")

or Blocked Persons List or any entity where such an SDN or blocked party has (or such SDNs and/or blocked parties collectively have) a fifty percent (50%) or greater interest.

3.16 Permits: Prior to any sale of any Product to any third party, Distributor shall have received all permits, consents and approvals from the relevant governmental authorities and regulatory agencies required in order to import, market, sell and service such Product (the "Permits"). Where allowed by applicable law, Distributor shall apply for all Permits in Candela's name, except for Permits regarding the import and re-sale of the Product which shall be filed in the name of Distributor. Where U.S. licenses under export control or sanctions rules are required for a sale, shipment, transfer or service, Distributor will request the necessary government authorization(s) in coordination with Candela and will not proceed with such transactions or activities until after the competent authority has issued the requested license. Distributor shall provide copies of any such licenses to Candela. Candela also shall be responsible for obtaining any required governmental authorizations for other jurisdictions, such as import licenses and foreign exchange permits. Candela shall assist Distributor in obtaining such Permits, provided it receives Distributor's prior written request for such assistance. In the event Distributor does not receive the necessary Permits within six (6) months of the Effective Date, Candela shall have the right to immediately terminate this Agreement and Distributor waives any demand or claim against Candela pertaining to such termination.

3.17 Company Recall Requirements: Distributor shall maintain at all times an updated location list of all Products sold pursuant to this Agreement. Such list shall include without limitation the following information for each Product: Product name and serial number, customer/Product service history, the customer name, place and date of installation, full address, point of contact, telephone/fax/email. In the event of an activation of a recall procedure by Candela, this list will be faxed by Distributor to Candela immediately upon notification of such a procedure. In addition, in case of a recall, Distributor shall use its best efforts to act in accordance with Candela's instructions, assist Candela and collect any and all Products found in the Territory. Whether or not there is a recall, if Candela announces implementation of a Field Safety Corrective Action ("FSCA"), Distributor shall transfer the site list and address of Products, coordinate with customers, support Candela implementing the FSCA and report on FSCA implementation.

3.18 Government Inquiries: Distributor shall promptly refer to Candela any inquiry from any governmental authority, trade association or news media, publication, reporter or the public concerning the Products or Candela. Distributor shall not make any oral or written representations that vary from the specifications, operating instructions or representations given or made by Candela to Distributor, if any, with respect to the Products or Candela.

3.19 Audit Rights: Candela shall have the right during the Term and for two (2) years thereafter to audit Distributor's expenses and activities in relation to this Agreement and to request periodic reports as Candela may deem appropriate in relation to Distributor's expenses.

3.20 Insurance: Without derogating from Distributor's liability pursuant to this Agreement or in law, Distributor undertakes to maintain and renew the insurance policies specified in this Section 3.20 ("Distributor's Insurances") at its own expense with a duly authorized insurer or a reputable insurance company having an S&P and/or A.M. Best rating of not less than A-, or equivalent, throughout the Term and for two years thereafter: (i) **Product Liability Insurance** with a limit of liability of US$1,000,000 per occurrence and US$3,000,000 in the aggregate, covering the liability of Distributor in respect of any property damage and/or bodily injury caused as a result of and/or in connection with the Products which have been supplied, handled, assembled, handed over, repaired, marketed and/or labeled by the Distributor and/or any party acting on its behalf; (ii) **Third Party Liability Insurance/Commercial General Liability** covering the Distributor's legal liability towards third parties in respect of bodily injury and/or property damage that may be suffered or incurred during the duration of this Agreement and in connection with the Services provided by the Distributor and/or those acting on its behalf pursuant to this Agreement, with a limit of liability of US$1,000,000 per occurrence and US$3,000,000 in the aggregate; and (iii) **Professional Liability Insurance** covering

Distributer's legal liability in respect of a professional error, fault, omission, negligence and/or breach of professional duty of the Distributer and any party acting on its behalf, which occurs during and/or due to and/or in the course of and/or in the framework of the provision of the Services, with a limit of liability of US$500,000 per occurrence and US$1,000,000 in the aggregate. With respect to Distributor's Insurances specified in clauses 3.20(i), 3.20(ii) and 3.20(iii) above, the policies shall be extended to indemnify Candela and/or those acting on its behalf in respect of their liability for acts and/or omissions of the Distributor and/or anyone on its behalf, subject to a cross liability clause. All of the Distributor's Insurances shall include the following provisions: (1) Distributor alone is responsible for payment of the premiums and the deductibles stated in the Distributor's insurances; (2) the Distributor's Insurances are primary to any insurance arranged by Candela and/or anyone on its behalf and Distributor's insurers waive any demand regarding contribution to Distributor's Insurances; (3) the policies will not be cancelled and/or detrimentally altered during the period of insurance without Candela being given written notification thirty (30) days in advance; and (4) if any of Distributor's Insurances are on a claims-made basis, the following demands shall also apply: (a) the policies shall be maintained by Distributor during the entire Term, and for an additional period of at least 3 years; (b) the policies shall apply retroactively from the commencement date of the provision of Services, even if this date is prior to the inception date of the policy; and (c) the policies will be subject to an extended discovery period of damages and claims for a period of a further twelve (12) months. Without derogating from the aforesaid, Distributor will not have any allegation and/or demand and/or claim against Candela and/or anyone on its behalf in respect of any damage to the property owned and/or in the responsibility of the Distributor, including any consequential loss.

4. **Candela's Responsibilities and Agreements**

4.1 Promotion Materials: Candela shall provide Distributor with a reasonable quantity of written and/or electronic marketing and technical brochures for the Products ("**Candela's Marketing Materials**"). Distributor shall be entitled to order additional Candela Marketing Materials in the English language for prices designated by Candela. Distributor shall be entitled to translate such Marketing Materials into other languages at Distributor's expense; provided that Distributor shall ensure that all such translations are accurate and Candela must approve all such translations before Distributor provides them to any customers or other third parties.

4.2 Training: Candela shall be responsible for providing Distributor personnel with the relevant training as detailed in Section 3.5 above.

5. **Forecasts, Orders, Acceptance and Delivery**

5.1 Forecasts: Unless otherwise agreed by the Parties in writing, Distributor shall provide Candela not later than ninety (90) days prior to the beginning of each calendar year with a twelve (12) month nonbinding forecast of its projected requirements for the Products for the year and a three (3) month nonbinding forecast of its requirements for the first three months of the year (the "**Forecast**"). The Forecast shall include without limitation reference to the quantities and requested delivery dates of the Products for each of the twelve (12) and three (3) month periods. Distributor shall update the Forecast for each period every three (3) months and provide an estimate of Product requirements for each period. Distributor shall use reasonable best efforts to provide Candela with complete and accurate Forecasts.

5.2 Orders: Distributor shall submit to Candela a binding written purchase order for the Products specifying the quantities and part numbers of the Products to be delivered, prices, payment terms, requested delivery dates, and special requirements (legal and others) applicable to such order not less than sixty (60) days prior to each requested delivery date. Distributor's orders shall not be binding on Candela, unless and until Candela accepts such orders in writing. Candela may reject any order in its sole discretion. Candela shall not be required to sell or deliver to Distributor a greater quantity of the Products than it shall have available or allocated for such purpose. If at any time(s) Candela shall be unable to supply the total demands upon it for the Products, it shall be entitled to devise any scheme(s), which it shall deem fair and equitable to allocate its available supply of Products among its distributors, customers and its

own needs. Candela shall not be required to purchase Products from any third party to enable it to deliver any order of Distributor, whether a new order or an order which has already been accepted, nor shall it be liable for any claims or damages arising out of its inability to supply any order due to shortage of the Products. In the event of a discrepancy between the terms of Distributor's orders and the terms of this Agreement, the terms of this Agreement shall prevail.

5.3 <u>Acceptance</u>: Distributor's receipt of any shipment of Products delivered under this Agreement shall constitute an unqualified acceptance and a waiver by Distributor of any and all claims with respect to the Products, or with respect to any other matter which can be found in a reasonable inspection of the delivery, unless Distributor gives Candela a written notice of claim within the earlier of thirty (30) days from the Ex-Works delivery date or fifteen (15) days after receipt of the delivery. Any claim for any defect covered by the warranty detailed in Section 0 below that is not capable of detection upon a reasonable inspection must be made in writing and be received by Candela promptly upon its discovery by Distributor, but in no event later than the end of the relevant period specified in Section 0. If no claim is received by Candela within such period, Distributor shall be deemed to have waived any claim with respect to such defect.

5.4 <u>Delivery</u>: Unless otherwise agreed in writing, all Products shall be delivered by Candela to Distributor Ex-Works (Incoterms 2010) Wayland, Massachusetts, USA. Title to and risk of loss of the Products shall transfer to Distributor upon delivery.

## 6.   **Prices and Payments**

6.1 <u>Purchase Price</u>: Product prices shall be as detailed in Candela's price list  as provided by Candela as of the Effective Date  Candela may, in its discretion, change such price list (i) promptly in the event of a price decrease, or (ii) by providing Distributor with a written notice not less than sixty (60) days prior to such change in the event of a price increase.

6.2 <u>Payment Terms</u>: Payment for each purchase order by Distributor to Candela for Products, reimbursement for costs of delivery (if applicable), and any other charges, shall be made to Candela with one hundred (100%) of all amounts within thirty (60) days of receipt of an invoice. Candela does not provide financing to Distributor. Unless otherwise agreed by the Parties in writing, payment for each purchase order of Products shall be made in US Dollars. Candela does not and will not offer any credit arrangements to Distributor, nor will it accept any return of Products from Distributor.

6.3 <u>Exclusions</u>: All consideration set forth in this Agreement is exclusive of any and all taxes, including customs duties, import taxes and sales, use or value added taxes, as applicable, which shall be paid by Distributor, and may be added by Candela to each invoice issued by it hereunder.

6.4 <u>Late Payments</u>: Noncompliance of Distributor with the payment terms specified in this Section 6 shall: (i) be deemed a material breach of this Agreement, which shall result in Candela having the rights detailed in Section 2.4 above; (ii) result in an interest charge at the rate of one percent (1%) per month until all amounts are paid in full, without prejudice to any other right or remedy available to Candela; and (iii) result in Candela having the right to immediately suspend and/or cancel any delivery of Products to Distributor. The Parties agree that any such suspension and/or cancellation shall not be deemed a breach of the terms of this Agreement, and shall be deemed a reasonable act on the part of Candela in light of the circumstances.

## 7.   **Product Warranties and Liability Limitation**

7.1 <u>Product Warranty</u>: Candela hereby warrants that: (i) Devices shall be materially free of defects in workmanship and materials for a period which will be the shorter of: (a) 12 (twelve) months from the date of installation of the Devices at the end-user site; or (b) 15 (fifteen) months from the date of Ex-Works shipment; (ii) Spare Parts shall be materially free of defects in workmanship and materials for a period of twelve (12) months from date of Device installation and (iii) new Applicators shall be materially free of defects in workmanship and materials for a period of twelve (12) months from date of Device installation and (b) refurbished Applicators shall be materially free of defects in workmanship and materials for a period of three (3) months



from date of Device installation.  If Distributor's customer schedules or delays Product installation more than forty-five (45) days after Candela's or Distributor's shipment (whichever is earliest), the one (1) year warranty will begin on the 46th day after such shipment.  If Distributor and/or Candela receive notice of a defect during the warranty period, Distributor will, at its option, either repair or replace the Product that is defective.  The customer must notify Distributor of any defect promptly after such defect first comes to the customer's attention.  Any replacement Products shall be, at Candela's option, new or refurbished Products, and are warranted for the remainder or the original warranty or thirty (30) days, whichever is longer.  This warranty is not transferable and is subject to the limitations set forth herein.  IN ADDITION, CANDELA'S SOLE OBLIGATION UNDER THIS WARRANTY AND DISTRIBUTOR'S SOLE REMEDY FOR BREACH OF THIS WARRANTY, AS BETWEEN CANDELA AND DISTRIBUTOR, SHALL BE FOR CANDELA TO PROVIDE DISTRIBUTOR THE PARTS NECESSARY FOR DISTRIBUTOR TO PROVIDE WARRANTY SERVICE TO CUSTOMERS AS DETAILED IN THIS SECTION 7.

7.2   NOTWITHSTANDING THE FOREGOING OR ANYTHING STATED TO THE CONTRARY IN THIS AGREEMENT, THE ABOVE WARRANTIES BY CANDELA DO NOT INCLUDE ANY WARRANTY WITH RESPECT TO THE CONSUMABLES AND/OR ACCESSORIES, AND TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, CANDELA DISCLAIMS AND MAKES NO WARRANTIES OF ANY KIND WITH RESPECT THERETO.

7.3   End User Remedies: If during the warranty period, any Product is determined to be defective by reason of material or workmanship, and provided Distributor immediately notifies Candela of such defect, Candela may, at its option, supply a replacement, or request the return of equipment to Candela's premises for repair.  Distributor shall pay shipping and handling costs of the Products returned to Candela's premises.  Return of a repaired or replacement Product to Distributor shall be at the expense of Candela unless Candela determines, in its sole discretion, that the Product is not defective within the terms of the warranty, in which event Distributor shall pay Candela all costs of handling, transportation and labor at Candela's then prevailing rates.  Distributor shall provide Candela with a report detailing the defect.  Repaired or replacement Products shall be shipped FOB (Incoterms 2010).

7.4   Exclusions from Warranty: Candela's warranties hereunder shall not apply in the event: (i) of damage by improper operation, tampering with, misuse, modification, accident or neglect; or Acts of God; (ii) of changes or repairs made without written authorization of Candela to do so or by inadequate and/or unqualified personnel; (iii) of use of products not manufactured or authorized in advance by Candela; (iv) of removal or alteration of identification labels; (v) a Product or Spare Part is resold or rented or leased to any third party; (vi) of storage of a Product in an unsuitable physical or operating environment; (vii) of sale or use of a Product outside the Territory; or (viii) a Product has previously been serviced, repaired or maintained by a third party that is not approved by Candela. The warranty granted to Distributor hereunder is solely for the benefit of Distributor's direct customers and shall not be extended to any other person or entity whatsoever including Distributor. Distributor shall be responsible to its customers for any and all warranties which it makes relating to all Products and for ensuring that replacements and/or repairs required in connection with the said warranties are satisfactory.

CANDELA AND ITS LICENSORS DO NOT WARRANT THAT (I) THE PRODUCTS WILL SATISFY OR MAY BE CUSTOMIZED TO SATISFY ANY END-USER'S REQUIREMENTS OR (II) THE USE OF THE PRODUCTS WILL BE UNINTERRUPTED OR ERROR-FREE. EXCEPT AS OTHERWISE PROVIDED HEREIN, CANDELA PROVIDES NO WARRANTY TO DISTRIBUTOR'S CUSTOMERS AND DISTRIBUTOR SHALL REMAIN SOLELY RESPONSIBLE WITH RESPECT THERETO. THE EXPRESS WARRANTIES AND OBLIGATIONS SET FORTH ABOVE ARE AND SHALL BE IN LIEU OF ALL OTHER WARRANTIES AND OBLIGATIONS OF CANDELA AND ITS AFFILIATES, EXPRESS OR IMPLIED, AND EXCEPT TO THE EXTENT HEREIN PROVIDED, CANDELA DOES NOT MAKE AND SHALL NOT BE DEEMED TO MAKE

ANY WARRANTY WHATSOEVER TO DISTRIBUTOR, TO ANY END USER OR TO ANY OTHER PERSON OR PARTY, INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR ANY PARTICULAR USE OR PURPOSE.

7.5 Distributor Indemnification: Distributor shall be liable for and indemnify and hold harmless Candela, and its employees, directors and third parties acting on its behalf, from and against all liabilities, losses, claims, penalties, damages, costs and expenses (including reasonable attorneys' fees), incurred as a result of or in connection with: (i) any breach of this Agreement, misconduct or negligent act by Distributor or any of its employees, directors or third parties acting on its behalf ("**Distributor Indemnifying Party or Parties**"); (ii) any violation of law by Distributor, any Distributor Indemnifying Party or Parties or by any customer of Distributor; (iii) product claims, representations or warranties made or alleged to be made by Distributor or any Distributor Indemnifying Party or Parties in its advertising, promotion or sale of any of the Products where such claims, representations or warranties were not provided by or approved by Candela in advance and in writing; (iv) labeling of any Product(s) which was/were not provided or approved by Candela; (v) negligent or unauthorized handling, installation, demonstration, service or testing of any Product(s) or negligent or unauthorized provision of any Services by Distributor or any Distributor Indemnifying Party or Parties; or (vi) any modification by Distributor or any Distributor Indemnifying Party or Parties of any Product(s).

7.6 Intellectual Property Injunction: In the event a final injunction is obtained against the use of any Product(s) or if in Candela's opinion any Product(s) are likely to become the subject of a claim of infringement, Candela will, at its option and expense, do one of the following: (a) procure for Distributor and its clients the right to continue using the Product(s); (b) replace or modify the Product(s) so as to make them non-infringing; or (c) grant Distributor a credit for the infringing Product(s) as depreciated (20% a year) and accept their return. Candela shall not have any liability to Distributor or to any third party if the alleged infringement is based upon use of the Product(s) in combination with items or devices not produced by Candela or upon Candela's compliance with Distributor's designs or special requirements.

7.7 Limitation of Liability: DISTRIBUTOR'S SOLE REMEDIES FOR BREACH BY CANDELA OF ANY AND ALL WARRANTIES HEREUNDER OR FOR ANY OTHER BREACH BY CANDELA OF THIS AGREEMENT SHALL BE LIMITED TO THE EXPRESS REMEDIES PROVIDED HEREIN. IN NO EVENT SHALL CANDELA'S TOTAL LIABILITY TOWARD DISTRIBUTOR FOR DAMAGES OR LOSSES INCURRED BY IT WITH RESPECT TO A PRODUCT SUPPLIED TO DISTRIBUTOR HEREUNDER EXCEED THE AMOUNTS ACTUALLY PAID BY DISTRIBUTOR TO CANDELA FOR SUCH PRODUCT, AS APPLICABLE. IN NO EVENT SHALL CANDELA BE LIABLE TO DISTRIBUTOR FOR ANY INCIDENTAL, INDIRECT, SPECIAL, THIRD-PARTY OR CONSEQUENTIAL DAMAGES OF ANY KIND ARISING OUT OF, OR IN CONNECTION WITH, THIS AGREEMENT, WHETHER OR NOT DISTRIBUTOR WAS ADVISED OF THE POSSIBILITY OF INCURRING SUCH DAMAGE OR LOSS.

## 8. **Intellectual Property, Trademarks and Tradenames**

8.1 Candela Intellectual Property: Distributor recognizes and acknowledges that all of Candela's Intellectual Property, including without limitation, all updates and new versions, improvements and development thereof, are and shall remain the sole and exclusive property of Candela, and that nothing in this Agreement shall constitute or be considered as constituting a transfer of, license to, or as the granting of any rights in, Candela's Intellectual Property or any part thereof to Distributor, except for the license to use the Proprietary Marks pursuant to Section 8.2. For the purpose hereof the term "**Intellectual Property**" shall mean all technology and know-how owned or used by Candela related to the Products, including but not limited to any device, product, data, technical knowledge, software and software codes, methods, specifications, usage, protocol, and other elements of know-how and technology, and all trade secrets, copyrights, patents and patent applications, trademarks, mask works, design processes, ideas, inventions, techniques, concepts, methods, computer programs and specifications, whether any of such items are tangible or intangible, and all associated industrial or intellectual property and other rights therein or related thereto, and all applications for any of the foregoing, whether or not registered in any country as of the Effective Date or at any later date.

8.2 <u>License</u>: Distributor is hereby granted a non-exclusive, limited, revocable, non-assignable, non-transferable license, to use Candela's trade names, and trademarks now owned or hereafter acquired ("**Proprietary Marks**") during the Term of this Agreement. Distributor shall use the Proprietary Marks strictly in accordance with Candela's instructions and solely in order to sell, promote and solicit orders for the Products in the Territory for the Market in accordance with the terms of this Agreement. Distributor hereby acknowledges that the Proprietary Marks are the sole property of Candela, and Distributor has no proprietary or equitable right or goodwill therein, and Distributor shall have no claim or right with respect to, or in connection with, the Proprietary Marks, during the Term and at any time after the expiration or termination thereof, except the right to use the Proprietary Marks during the Term as specified herein.

8.3 <u>Branding</u>: Distributor agrees to display Candela's Proprietary Marks solely in connection with identifying Candela in the sale and marketing of the Products. Distributor shall place the Proprietary Marks in all of its promotion and Marketing Materials relating to the Product, including without limitation websites, brochures, magazines and other audio and visual aids. Distributor shall not remove copyright notices or any trademarks from the Products. Distributor shall not be entitled to use the Proprietary Marks together with its own trademarks and tradenames, except in a manner authorized in writing by Candela and in compliance with distribution standards and specifications established by Candela. Distributor shall not alter or remove any identifying name or logo, trademark or copyright, restricted rights, limited rights, proprietary rights or confidentiality notice included in or affixed to the Products, and any marketing, sales or technical documentation.

8.4 <u>Registration</u>: Distributor shall be entitled to register in the Territory Candela's Proprietary Marks only in Candela's name, and in the event such registration is not possible or Distributor received a written authorization from Candela to register the Proprietary Marks in Distributor's name, Distributor agrees to assign to Candela or any third party on its behalf the Proprietary Marks promptly upon Candela's request and for no cost to Candela or such designated third party. For the avoidance of doubt, Distributor agrees that its obligations under this Section 8.4 shall be in force and effect also with respect to any domain registered in the name of Distributor. All internet domains containing any Candela trademarks, tradenames, or variations thereof ("**Domain Marks**") are and shall be the sole and exclusive property of Candela. Distributor warrants and represents that Distributor shall not register, nor induce or cause any third party to register, any domains containing the Domain Marks. In the event that Distributor plans to launch a website on any domain containing any Candela trademarks, tradenames, or variations thereof, then Distributor shall first inform Candela of such plan, and Candela may, in its sole discretion, purchase such domains and will work with Distributor's IT vendor to direct such domain to Distributor's local web platform. Any and all information published under any such domain should comply with all applicable laws, rules and regulations and shall be in accordance with the marketing guidelines issued from time to time by Candela.

8.5 <u>Identification</u>: During the Term of this Agreement Candela may identify Distributor as a distributor of Candela's Products in advertisements and other promotional literature, and Distributor may present itself as a distributor of Candela's to its customers.

8.6 <u>Use upon Termination</u>: Upon termination or expiration of this Agreement, the license granted to Distributor for the use of the Proprietary Marks shall also expire and Distributor shall make no further use whatsoever of the Proprietary Marks.

8.7 <u>Guarding of the Intellectual Property and Proprietary Marks</u>: During the Term of this Agreement, Distributor shall guard the Intellectual Property and Proprietary Marks from any infringement. Distributor shall promptly inform Candela of any infringement by a third party of the rights related to the Intellectual Property or Proprietary Marks, which Distributor becomes aware of, and shall use its best efforts to assist Candela in taking legal action against such infringement.

9. **Technology and Confidentiality**

9.1 Disclosure of Confidential Information: Candela may disclose to Distributor from time to time certain information to assist Distributor in the performance of its obligations under this Agreement including without limitation Intellectual Property, technical, commercial, financial, and any other information concerning the Products (the "**Information**").

9.2 Distributor shall not use, nor allow or assist others to use, in any way whatsoever, any part of the Information for any purpose whatsoever, except as expressly specified and authorized under this Agreement.

9.3 Distributor shall keep and hold in strict confidence all Information, in such a manner as to prevent disclosure of such Information to un-authorized persons and for un-authorized uses. Distributor shall ensure that each of its employees, agents and contracted third parties including permitted subcontractors and sub-distributors, if any, shall be subject to a written agreement containing terms which shall be the equivalent of the terms of this Agreement with respect to the non-disclosure and non-use of the Information.

9.4 At any time during or after the Term of this Agreement, Distributor shall not take any action to challenge or assist others in challenging the validity of any Information.

9.5 Promptly upon termination of this Agreement, Distributor will discontinue the use of any Information in its possession and return such Information to Candela together with all copies thereof. In addition, Distributor's most senior executive shall confirm in writing that all hard copies and soft copies of documents and files containing Information have been destroyed or returned to Candela.

9.6 Distributor represents and warrants that as of the date of the first contact made between Candela and Distributor in negotiations towards reaching this Agreement, Distributor has maintained all confidentiality, non-use and other obligations as set forth in this Section 9.

10. **Term and Termination**

10.1 Term: This Agreement shall commence on the Effective Date and shall continue in full force and effect for one year (the "**Initial Term**") and thereafter shall automatically continue for consecutive one-year periods until terminated by either Party by providing the other Party with thirty (30) days prior written notice. The Initial Term and any subsequent continuation periods of this Agreement shall collectively be referred to in this Agreement as the "**Term**".

10.2 Immediate Termination: Notwithstanding Section 10.1 above, each Party shall have the right to terminate this Agreement at any time with immediate effect by providing written notice to the other party in any of the following events: (i) winding-up, receivership, dissolution or reorganization proceedings shall be commenced with respect to the other party which proceedings are not rescinded within thirty (30) days of their commencement; or (ii) the other Party shall substantially cease to carry on business; or (iii) a substantial part of the other Party's assets shall be attached or levied by a court or another official agency; or (iv) the other Party shall fail to perform or shall be in breach of any of its obligations under this Agreement and such failure or breach cannot be rectified, such as in the case of a violation of law, or shall not be rectified within thirty (30) days after receiving a written notice from the other Party, specifying the failure or breach and demanding its cessation.

10.3 Change of Control: Notwithstanding Section 10.1 above, in the event that a change of control of Distributor shall occur, Candela shall be entitled to terminate this Agreement with a thirty (30) days prior written notice. Distributor shall give notice to Candela promptly upon the occurrence of such a change of control. For purposes of this Agreement, a change of control shall be deemed effective upon the occurrence of the acquisition by any third-party of the actual or effective power or ability to control or materially influence, directly or indirectly, the direction of management and policies or business of Distributor through the purchase of its voting shares or otherwise.

10.4 <u>Unilateral Termination</u>: Notwithstanding the foregoing, either Party may terminate this Agreement at will and at any time with sixty (60) days prior written notice to the other Party.

11. **Consequences of Termination.**

11.1 In the event of termination or expiration of this Agreement, the provisions of this Agreement shall continue to apply to all orders confirmed in writing by Candela prior to the date of such termination or expiration, and such orders shall continue to be in effect. Notwithstanding the above, in the event that this Agreement was terminated by Candela pursuant to Sections 10.2 or 10.3, Candela shall be entitled, in its sole discretion, to terminate such orders by providing Distributor with a written notice to that effect. Termination or expiration of this Agreement shall not, however, relieve or release Distributor from making all payments due to Candela under the terms of this Agreement and from other obligations which shall survive pursuant to the provisions of this Agreement following termination or expiration of this Agreement.

11.2 Upon the termination or expiration of this Agreement for any reason: (i) Distributor shall cease to market and sell Products and the use of the Intellectual Property and Proprietary Marks except as detailed herein below; (ii) Distributor shall, within ten (10) days following such termination or expiration, return to Candela and/or upon Candela's instructions destroy and delete, any information in any form obtained in connection with this Agreement from Candela (including without limitation Information and Marketing Materials) and all copies thereof in its possession, including all electronic copies; and confirm such return in writing to Candela; (iii) Distributor shall, within ten (10) days following such termination or expiration, return to Candela all property owned by Candela, including all samples and demonstration Products and materials; (iv) refer all inquiries with respect to the Products to Candela; (v) cooperate with any new party appointed by Candela; (vi) transfer to Candela all available data and data bases with respect to its customers, including without limitation the Reports, Distributors commitments with respect to warranty, list and term of service contract and other material facts relating to the Products. Distributor shall provide Candela with a list detailing, all customers and the locations of the installation of all Devices sold by Distributor and any additional details reasonably requested by Candela for the purpose of providing Services to such customers in the future. Distributor shall transfer all Permits and Proprietary Marks to the name of Candela or its designee without payment by Candela of any consideration for such transfer.

11.3 Distributor covenants and agrees that it shall, at its expense (notwithstanding anything to the contrary), take all actions necessary and appropriate, including without limitation execution of relevant notices to the appropriate authorities, to transfer and assign to Candela or at Candela's request, to any other person or entity, who may enter into an agreement with Candela for the distribution of the Products in the Territory (**"Subsequent Distributor"**), any Permit granted in Distributor's name with respect to the distribution and sale of the Products within the Territory. Candela shall reimburse Distributor for such out of pocket expenses against invoices. Distributor hereby irrevocably constitutes and appoints Candela or Subsequent Distributor (as the case may be) , or Candela's successor, the true and lawful attorney of Distributor with full power of substitution, on behalf of and for the benefit of Candela or Subsequent Distributor (as the case may be), to do all such acts and things in relation to the transfer and assignment stipulated in this Section 11.3, as Candela and/or Subsequent Distributor, may reasonably deem advisable. Distributor acknowledges and agrees that it is aware Candela is entering into this Agreement, in reliance, among other things, on the compliance by Distributor with that which is stipulated in this Section 11.3 and, without diminishing any other recourse and remedy available to Candela, Candela may off-set and withhold any and all payments owed to Distributor pursuant hereto, against any losses or damages arising from or otherwise associated with Distributor's lack of compliance with respect herewith. In addition to the foregoing, and notwithstanding anything to the contrary hereunder, Distributor shall indemnify Candela from any and all losses or damages arising from or otherwise associated with Distributor's lack of compliance with respect to the provisions of this Section 11.3, including without limitation any indirect damages or loss of profits related to limitations on the distribution of Products within the Territory by Candela and/or a Subsequent Distributor.

11.4  Separation Compensation. In the event of termination or expiration of this Agreement, neither Party will be entitled to the payment of separation compensation from the other party.

11.5  Survival Provisions. The provisions of Sections: 2.3, 3.12-3.14, 3.17-3.20, 7, 8, 9, 11, 12 and 13, and all provisions hereof which by their nature should survive, shall survive the termination or expiration of this Agreement.

## 12.  **Force Majeure.**

12.1  If any Party is unable, wholly or in part, by reason of Force Majeure to carry out any obligation under this Agreement, the obligation shall be suspended so far as it is affected by such Force Majeure (as defined below) during the continuance thereof. The Party concerned shall: (i) give the other Party prompt notice of such Force Majeure with reasonably full particulars thereof and, insofar as known, the probable extent to which it will be unable to perform or be delayed in performing such obligation; and (ii) use reasonable diligence to remove such Force Majeure or its effects as quickly as possible. If any such Force Majeure continues or will continue for more than thirty (30) days, either Party may terminate this Agreement on prior written notice to the other Party.

12.2  For the purpose of this section "**Force Majeure**" shall mean an act of God, war (declared and undeclared), army mobilization, blockade, revolution, riot, insurrection, civil commotion, sabotage, lightning, fire, earthquake, storm, flood, explosion, strike or other labor unrest, unavailability or inability to obtain or delay in availability of necessary materials, parts, equipment or transport, and any other cause whether of the kind specifically enumerated above or otherwise which is not reasonably within the control of the Party affected.

## 13.  **Miscellaneous**



13.1  The preamble to this Agreement shall form an integral part hereof.

13.2  All correspondence pertaining to this Agreement, and to any matter covered by this Agreement, will be in the English language.

13.3  Neither Party shall make an assignment of its respective rights and obligations under this Agreement without the prior written authorization of the other Party. Notwithstanding the foregoing, Candela shall be entitled to assign or transfer this Agreement or any indebtedness of Distributor to any of its affiliates or to any third party that acquires control of Candela.

13.4  No modification or waiver of any provision of this Agreement, nor consent to any departure herefrom, shall in any event be effective unless the same shall be in writing and signed by both Parties.

13.5  No failure in exercising any remedy or right hereunder shall be construed as a waiver of such remedy or right, nor shall any failure in exercising a right or remedy hereunder due to an instance of breach or default imply acquiescence to such breach or default in similar situations.

13.6  This Agreement constitutes the entire agreement between the Parties pertaining to the subject matter hereof and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, regarding the subject matter hereof between the Parties.

13.7  The validity, construction, performance, termination and post-termination obligations of this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts of the United States. The competent courts of the Commonwealth of Massachusetts of the United States shall have exclusive jurisdiction with respect to this Agreement.

13.8  It is hereby declared and agreed that no employer-employee relationship shall exist between Candela and Distributor and/or any of Distributor's personnel, but rather Distributor shall act as an independent contractor of Candela. Candela shall not have any responsibility or obligation whatsoever towards any of Distributor's personnel, and Distributor shall indemnify Candela for any loss or damage which Candela suffers in connection with any of Distributor's employees and/or independent contractors.

13.9 Any provisions of this Agreement prohibited by law shall be ineffective to the extent of such prohibition, without invalidating the remaining provisions hereof. In such case of an ineffective provision, the Parties agree to replace the ineffective provision with a new provision having the same (or as close as possible) economic effect.

13.10 In the event of a breach by either Party of its obligations under this Agreement, the other Party may seek injunctive relief in any court of competent jurisdiction at any time. Such right to injunctive relief shall be in addition to any other rights in respect of such breaches.

13.11 All notices given hereunder shall be in the English language and in writing or other permanently recorded form, shall be effective upon receipt and may be given by any internationally recognized courier service and shall be addressed to the Party intended as the recipient thereof as follows-

      (1) To Candela:

          General Counsel

          Candela Corporation

          530 Boston Post Road

          Wayland, MA 01778, USA

      (2)To Distributor:

          AE Medical Technologies, Inc.

          Mr. Arnaldo Miranda

          Telephone Number: +1-787-234-3621



13.12 The section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

    IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be duly signed and executed.

 

**Candela Corporation**          **AE Medical Technologies, Inc.**

Name: _____      Name: Arnaldo Miranda

Title: _____      Title: President

Date: _____      Date: 4/1/2018

## Annex 1.1 - Products
### Syneron Devices

CO2RE Intima

eTwo

UltraShape Power

Profound

The Products include Applicators, Spare Parts, Consumables and Accessories necessary for such Devices as detailed in the applicable product manual, Territory Candela website or as otherwise provided by Candela.

### Candela Devices

GLPro

GMax Pro

ATV Pico / PicoWay

The Products include Applicators, Spare Parts, Consumables and Accessories necessary for such Devices as detailed in the applicable product manual, Territory Candela website or as otherwise provided by Candela.

## Annex 2.2

### Device Purchase Minimums

Distributor's Purchase Minimums for 2018 shall be as follows:

| Quarter | Device Purchase Minimums (USD) |
|---------|-------------------------------|
| Q1, 2018 | 59,000 |
| Q2, 2018 | 43,000 |
| Q3, 2018 | 41,000 |
| Q4, 2018 | 34,000 |

For each subsequent year of this Agreement, Distributor's Purchase Minimums shall be increased by _____ percent per calendar quarter or as otherwise determined by Candela.



**Annex 3.6**

**General Marketing and Promotional Tasks of Distributor**

Distributor shall, inter alia, perform the following sales promotion activities and tasks in the Territory, on a continuous basis throughout the Term of this Agreement as described in more detail by Distributor in its annual Promotional Plans:

1.  Participation in 2 Congresses: Convencion Sociedad Dermatologia de PR June 28th-July 1st and Convencion Ginecologia & Obtetricia Aug 28th.

2.  Participation in all relevant medical and aesthetic convention and trade shows.

3.  Displaying demo Products at technical exhibitions.

4.  Pre-show mailer (invitation) to attending doctors, beauticians and aestheticians and other potential buyers.

5.  Post-show follow-on.

6.  Demonstration of the system at potential buyers sites.

7.  Periodic workshops for doctors, beauticians and aestheticians.

8.  Seasonal advertisement in relevant trade magazines, web-based etc.

9.  Media coverage.

10. Conduct periodic promotions and market studies with respect to the Products.

11. Feature the Products in all of Distributor's catalogs and other promotional materials and on each of Distributor's appropriate websites. The Products shall be the main and most prominent features in and on such catalogs and web sites.

12. Social Media Coverage such as Distributor Facebook pages, Youtube channels, Twitter feeds and the like.

**Annex 3.11**

**Company Service Level Agreement**

1.  Response Time: Within twenty-four (24) hours from the time a customer calls Distributor, Distributor will contact the customer and determine the extent of any problem or customer requirement.

2.  Distributor's Customer down time: Not more than two (2) business days from customer contact.

3.  Amount of preventive maintenance required for Product under Warranty: As specified in Candela's Product manuals.



# ANEJO 1A

### DISTRIBUTORSHIP AGREEMENT

This Distributorship Agreement (the "**Agreement**") is effective as of April 1, 2018 (the "**Effective Date**") and is between Candela Corporation, a US corporation organized and existing under the laws of the state of Delaware and having a place of business located at 530 Boston Post Road, Wayland, Massachusetts 01778, USA ("**Candela**"), and AE Medical Technologies, Inc., a company organized and existing under the laws of Puerto Rico and having a place of business located at PR 152 KM 12.6, Cedro Arriba, Naranjito PR 00719 ("**Distributor**"). Each of Candela and Distributor may be referred to herein as a "**Party**" and collectively they may be referred to as the "**Parties**".

**WITNESSETH:**

WHEREAS, Candela is interested in appointing Distributor as a distributor in Puerto Rico (the "**Territory**") for the promotion, marketing and sale of the Products, including the Devices, Applicators, Spare Parts, Consumables and Accessories (as such terms are defined in Section 1.1) to medical institutions, physicians, physiotherapists, cosmeticians, aestheticians and beauticians, and/or business owners (the "**Market**");

WHEREAS, Distributor is interested in being appointed as a distributor of the Products in the Territory for the Market, and Distributor declares that it possesses the necessary expertise, personnel, resources and skills to promote, market and sell the Products in the Territory, and to provide service and clinical trials for such Products in the Territory; and

WHEREAS, the Parties wish to set forth herein the terms and conditions which shall govern their relationship.

**NOW, THEREFORE**, in consideration of the foregoing and of the promises, agreements, representations, warranties, and covenants herein contained, the Parties hereby agree as follows:



1. **Appointment**

1.1 <u>Appointment</u>: Subject to the terms and conditions of this Agreement, Candela hereby appoints Distributor as Candela's distributor for the Market in the Territory for Candela's Products as detailed in <u>Annex 1.1</u> attached to this Agreement (respectively "**Devices**", "**Applicators**", "**Spare Parts**", "**Consumables**", and "**Accessories**" and collectively "**Products**") and for the provision of related Services (defined in Section 3.11). Candela Products may include any and all product families marketed by Candela. Candela shall be entitled to change the Products detailed in <u>Annex 1.1</u> at any time(s) by providing Distributor with a ninety (90) day prior written notice of such change(s). It is acknowledged and agreed by the Parties that when "selling", "sell" or "sale" are referenced or indicated herein with respect to Products, this terminology is not applicable to the software contained within the Products. Candela provides to Distributor a limited, revocable, non-assignable, non-transferable right and license to sublicense the software, solely for the Market in the Territory as part of the Products, to its customers; provided that the following minimum terms, the acceptance of which Distributor shall be solely responsible for ensuring, are conveyed to and agreed to by each of Distributor's customers:

i. The customer shall use only one copy of the software solely in conjunction with the Product purchased from Distributor and pursuant to the Candela end user manual associated with such Product.

ii. The software contained in the Product(s) is confidential and proprietary information of Candela and/or its licensors.

iii. Customer will not attempt to decompile Candela software.

1.2 <u>Exclusivity</u>: Distributor's appointment as set forth above shall be on an exclusive basis for the designated Market in the Territory.



Science. Results. Trust.

Date:  April 18, 2018

To:  AE Medical Technologies, Inc.
CARR 811 KM 1.0 RAMAL CEDRO ABAJO
NARANJITO, PR 00719
United States

This letter serves to confirm that, as of the date written above, AE Medical Technologies, Inc. ("AE Medical") is the exclusive distributor of Syneron-Candela in Puerto Rico.

Please feel free to send this letter to customers in Puerto Rico to verify the current relationship between AE Medical and Syneron-Candela.

If a customer has any product inquiries, they should contact AE Medical at 787-903-3363.  For any further inquiries, please contact Michael Marin, Managing Director of Latin America for Syneron-Candela, at 561-212-9765.

Sincerely,

Mary Trout
President, Americas
Syneron-Candela





# <u>ANEJO 2</u>



**Elmer Miranda <emiranda@aemedicaltec.com>**

---

**Ae medical Puerto Rico Teams meting**

---

**Walter Guevara** <walterg@candelamedical.com>                                              Mon, Jan 22, 2024 at 10:42 AM
To: Gabriela DiCesare <gabriela.dicesare@candelamedical.com>, "Elmer Miranda, AE Medical Technologies, Inc."
<emiranda@aemedicaltec.com>, "jmiranda@aemedicaltec.com" <jmiranda@aemedicaltec.com>
Cc: Antonio Zorro <antonioz@candelamedical.com>, Tabitha Barbosa <tabithab@candelamedical.com>, Traci Paletsky
<tracip@candelamedical.com>, Sonsoles Salgueiro <sonsoless@candelamedical.com>, Jorge Ricardo Mojica Ramos
<jorger@candelamedical.com>, Daniela Lira Diez <daniela.diez@candelamedical.com>, "aortiz@aemedicaltec.com"
<aortiz@aemedicaltec.com>

## <u>2nd meeting **missed by Distributor**</u>

## **1/19/2024**

## **2023 sales**

## **Sales**

<span style="color:red">Sales for 2023 405,000</span>

Is this correct?  If we do not have a plan to grow above 500k I need diverse distribution

What is the plan for growth with Matrix and Nordlys?

## Marketing

Possible work shop at Derm meeting.  Maybe work with KOL doc who just bought Gentle now adding Nordlys and Profound

## Nordlys/ Profound Matrix

0 Nordlys in 2023?  Loss of exclusivity for Nordlys

## Update on marketing

## Service

No current issues per Jorge

Microsoft Teams meeting

**Join on your computer, mobile app or room device**

**Click here to join the meeting**

Meeting ID: 332 893 919 712
Passcode: pUbzmN

Download Teams | Join on the web

**Or call in (audio only)**

+1 213-526-0240,,211339968#   United States, Los Angeles

Phone Conference ID: 211 339 968#

Find a local number | Reset PIN

Learn More | Meeting options

_____

# ANEJO 3

12/4/24, 10:23 AM                                    aemedicaltec.com Mail - need to discuss future of Candela AE med

 Gmail

Elmer Miranda <emiranda@aemedicaltec.com>

**need to discuss future of Candela AE med**
5 messages

**Walter Guevara** <walterg@candelamedical.com>                                    Wed, Jun 5, 2024 at 9:07 AM
To: "emiranda@aemedicaltec.com" <emiranda@aemedicaltec.com>, "jmiranda@aemedicaltec.com" <jmiranda@aemedicaltec.com>

Please send me a time we can discuss today


Walter Guevara Jr.

Director Latin American Sales

Candela Medical

walterg@candelamedical.com

Cell 248-797-2073

WhatsApp +1(248)797-2073


**Follow us on Social Media**

Candela Medical LATAM (@candelamedicallatam) • Instagram photos and videos


**For Service**

service.latam@candelamedical.com

**WhatsApp:**

Jorge Mojica +522292679480

# <u>ANEJO 4</u>



Elmer Miranda <emiranda@aemedicaltec.com>

**need to discuss future of Candela AE med**

**Elmer Miranda** <emiranda@aemedicaltec.com>
To: Walter Guevara <walterg@candelamedical.com>
Cc: jmiranda@aemedicaltec.com

Thu, Jun 6, 2024 at 8:28 AM

Hi Walter,
I am taking few days of vacations. Let's make a conference call or a teams meeting next Monday the 10th in the morning. Please confirm.
Elmer Miranda

Sent from my iPhone

> On Jun 5, 2024, at 9:08 AM, Walter Guevara <walterg@candelamedical.com> wrote:
>
> Please send me a time we can discuss today
>
> Walter Guevara Jr.
>
> Director Latin American Sales
>
> Candela Medical
>
> walterg@candelamedical.com
>
> Cell 248-797-2073
>
> WhatsApp +1(248)797-2073
>
> **Follow us on Social Media**
>
> Candela Medical LATAM (@candelamedicallatam) • Instagram photos and videos
>
> **For Service**
>
> service.latam@candelamedical.com
>
> **WhatsApp:**
>
> Jorge Mojica +522292679480



Elmer Miranda <emiranda@aemedicaltec.com>

## need to discuss future of Candela AE med

**Walter Guevara** <walterg@candelamedical.com>
To: Elmer Miranda <emiranda@aemedicaltec.com>
Cc: "jmiranda@aemedicaltec.com" <jmiranda@aemedicaltec.com>, Robert Fielitz <robertf@candelamedical.com>

Thu, Jun 6, 2024 at 11:09 AM

Yes, but you will be receiving a letter of non exclusivity from Candela.

Our communication is very bad

We have been promised an order for gentles for 5 months

I had a review with Robert

# ANEJO 5



Elmer Miranda <emiranda@aemedicaltec.com>

---

## Regarding Candela's and AE Medical Contract-Post Virtual Meeting of 6/10/24

**Walter Guevara** <walterg@candelamedical.com>                    Wed, Jun 19, 2024 at 12:46 PM
To: "Elmer Miranda, AE Medical Technologies, Inc." <emiranda@aemedicaltec.com>, Robert Fielitz <robertf@candelamedical.com>
Cc: "jmiranda@aemedicaltec.com" <jmiranda@aemedicaltec.com>, Antonio Zorro <antonioz@candelamedical.com>


Elmer this is not acceptable.  We will move to terminate our relationship 1July 2024

---

**From:** Elmer Miranda, AE Medical Technologies, Inc. <emiranda@aemedicaltec.com>
**Sent:** Friday, June 14, 2024 6:04 PM
**To:** Robert Fielitz <robertf@candelamedical.com>
**Cc:** Walter Guevara <walterg@candelamedical.com>
**Subject:** [External] Regarding Candela's and AE Medical Contract-Post Virtual Meeting of 6/10/24


**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# ANEJO 6



**Elmer Miranda <emiranda@aemedicaltec.com>**

---

## Regarding Candela's and AE Medical Contract-Post Virtual Meeting of 6/10/24

**Walter Guevara** <walterg@candelamedical.com>                    Wed, Jun 19, 2024 at 12:46 PM
To: "Elmer Miranda, AE Medical Technologies, Inc." <emiranda@aemedicaltec.com>, Robert Fielitz <robertf@candelamedical.com>
Cc: "jmiranda@aemedicaltec.com" <jmiranda@aemedicaltec.com>, Antonio Zorro <antonioz@candelamedical.com>

Elmer this is not acceptable.  We will move to terminate our relationship 1July 2024

---

**From:** Elmer Miranda, AE Medical Technologies, Inc. <emiranda@aemedicaltec.com>
**Sent:** Friday, June 14, 2024 6:04 PM
**To:** Robert Fielitz <robertf@candelamedical.com>
**Cc:** Walter Guevara <walterg@candelamedical.com>
**Subject:** [External] Regarding Candela's and AE Medical Contract-Post Virtual Meeting of 6/10/24

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# ANEJO 7

5-2-2024, Emails entra Juan Miranda de AE, Daniela Lira Diez y Walter Guevara coordinado la visita para entrenamientos y demostraciones.

 Gmail                                         Elmer Miranda <emiranda@aemedicaltec.com>

**follow up from Friday call**

**Daniela Lira Diez** <daniela.diez@candelamedical.com>                    Thu, May 2, 2024 at 1:05 PM
To: "jmiranda@aemedicaltec.com" <jmiranda@aemedicaltec.com>
Cc: Walter Guevara <walterg@candelamedical.com>, "emiranda@aemedicaltec.com" <emiranda@aemedicaltec.com>

Ningún problema.

---

**De:** Juan A. Miranda <jmiranda@aemedicaltec.com>
**Enviado:** Thursday, May 2, 2024 12:53:25 PM
**Para:** Daniela Lira Diez <daniela.diez@candelamedical.com>
**Cc:** Walter Guevara <walterg@candelamedical.com>; emiranda@aemedicaltec.com <emiranda@aemedicaltec.com>
**Asunto:** Re: [External] Re: follow up from Friday call

Saludos Daniela,

Gracias por tu pronta respuesta. ¿Podemos separar esa semana del 24 de junio? Nos confirmas para separar pasaje, hotel y el lugar para los demos.

Gracias anticipadas,

Juan A. Miranda
jmiranda@aemedicaltec.com
t. 787.359.1788

Inline image

On Thu, May 2, 2024 at 12:36 PM Daniela Lira Diez <daniela.diez@candelamedical.com> wrote:
  Hola Amaury,

  Recién retornando ya que fue feriado en Chile.
  Mi disponibilidad es a partir del 24 de junio.

  Saludos,

  **Daniela Lira Diez** | LATAM Clinical Manager
  **CANDELA LATAM**
  T: +56 9 30312088

  daniela.diez@candelamedical.com|  www.candelamedical.com

**From:** Juan A. Miranda <jmiranda@aemedicaltec.com>
**Sent:** Thursday, May 2, 2024 12:10 PM
**To:** Walter Guevara <walterg@candelamedical.com>
**Cc:** Daniela Lira Diez <daniela.diez@candelamedical.com>; emiranda@aemedicaltec.com <emiranda@aemedicaltec.com>
**Subject:** [External] Re: follow up from Friday call

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good afternoon all,

Following up on the email I sent on Tuesday.


Juan A. Miranda
jmiranda@aemedicaltec.com
t. 787.359.1788


Inline image


On Tue, Apr 30, 2024 at 8:02 AM Juan A. Miranda <jmiranda@aemedicaltec.com> wrote:
> Good morning all,
>
> Daniela, please let me know which dates in June you have available so that we can plan accordingly. We would like to work out a full week if possible for some trainings and demos.
>
> Kind regards,
>
> El lun, 29 abr 2024 a la(s) 1:09 p.m., Walter Guevara (walterg@candelamedical.com) escribió:
>
> > Amaury
> >
> > Thank you for the time on the phone action items for you.
> >
> > Set a date for Daniela to visit/ demo day.  Remember she is out to June.  Your Nordlys and matrix will not sell sitting in your warehouse.
> >
> > Please set a date for a workshop in Puerto Rico.
> >
> > Place orders for two Gentles
> >
> > Please work to plan these out as we are already to the half year mark when you consider how far you have to plan.
> >
> > Walter Guevara Jr.
> >
> > Director Latin American Sales
> >
> > Candela Medical
> >
> > walterg@candelamedical.com
> >
> > Cell 248-797-2073
> >
> > WhatsApp +1(248)797-2073

Boletos aéreos e itinerario de viaje de Daniela Lira Diez para entrenamientos y demos

Daniela 's American Express Travel Itinerary.
Enjoy your trip to San Juan!

## AMEX TRAVEL TRIP ID: 6203-4236

We recommend that you stay up to date on any requirements and restrictions that may impact your travel - both prior to any cancellation deadlines and your date of travel. If you'd like to cancel an upcoming booking, please visit My Trips.

| DEPARTURE | | RECORD LOCATOR 3T4DSJ |
|---|---|---|
| Mon, June 24 | 1:50am - 1:35pm | 11h 45m |
| avianca | Santiago, SCL - San Juan, SJU | 1 Stop (MDE) |

**Stops**

| avianca 122 Operated by Avianca | 1:50am - 6:59am Santiago, SCL - Medellín, MDE | 6h 9m | Economy Seat: Unassigned |
|---|---|---|
| avianca 266 Operated by Avianca | 10:00am - 1:35pm Medellín, MDE - San Juan, SJU | 2h 35m | Economy Seat: Unassigned |



## RETURN

**RECORD LOCATOR**

**3T4DSJ**

Sat, June 29

avianca

6:10pm - 4:10am **+1 day**

San Juan, SJU - Santiago, SCL

10h 0m

1 Stop (BOG)

**Stops**

| | | |
|---|---|---|
| avianca 259 Operated by Avianca | 6:10pm - 8:00pm San Juan, SJU - Bogot, BOG | 2h 50m | Economy Seat: Unassigned |
| avianca 97 Operated by Avianca | 9:30pm - 4:10am Bogot, BOG - Santiago, SCL | 5h 40m | Economy Seat: Unassigned **Plane Changes** |

Seat requests are passed to the airline, but cannot be guaranteed. Check with the airline soon after booking to confirm.

📅 Add to Calendar

**Free 24 Hour Cancellation**
Call 1-800-297-2977 within 24 hours of booking for a full refund.

## TRAVELER INFORMATION

Daniela Alejandra Lira Diez

| LOYALTY PROGRAM | SPECIAL REQUESTS | TSA KNOWN TRAVELER # | TICKET NUMBER |
|---|---|---|---|
| -- | If you submitted Meal type/Special Assistance requests, they will be sent to the airlines. Airlines do their best to accommodate requests but will not guarantee them. Be sure to check with the airlines prior to your travel. | -- | Unassigned |

# ANEJO 8

 

June 20, 2024

Mr. Walter Guevara Jr.
Director Latin American Sales
Candela Medical
walterg@candelamedical.com

Mr. Antonio Zorro
Sr. Service Manager LATAM & Service Training
Candela Medical
Antonio Zorro <antonioz@candelamedical.com>

C: Mr. Robert Fielitz robertf@candelamedical.com

Good afternoon:

After the virtual meeting held this morning, I proceed to make the following clear:

(1) AE Medical has been the exclusive distributor of Candela in Puerto Rico for 17 years.

(2) AE Medical received three emails from Candela with a threat to withdraw from AE's the exclusivity contract.

(3) We held a meeting, and the issue was discussed, with Candela making it clear that the exclusivity contract would be maintained if sales of $500,000.00 for 2024 were obtained.

(4) The subscriber, who agreed to remain in charge of everything related to Candela in terms of marketing and representation of the line, proceeded to do an internal marketing study to know the market trend for the remainder of the year 2024. Surprisingly, the various elite clients of Candela informed that they would not be purchasing any other products for the rest of the year 2024. Other clients of Candela in Puerto Rico represent minimal sales compared to those consulted. Responsibly, the subscriber let Candela know that if the exclusivity of the line depended on the committing to generate income of $500,000.00, for December 31st 2024, this was not possible.

(5) AE also informed that would continue servicing and selling the accounts acquired by AE during these 17 years, leaving room for other Candela's sellers to acquire new customers and additional sales.

AE Medical Technologies, Inc., HC72 Box 3766 PMB 278, Naranjito PR, 00719, Tel. 787-979-0053, emiranda@aemedicaltec.com

 

(6) At no time AE never expresses that the expected number could not be reached. What we clearly stated is that even though we could try to reach the expectations, we could not responsibly commit to obtaining them. We would follow the sales, and no one could say whether AE could achieve them, or not.

(7) In response to our letter and to AE's surprise, Walter sent a curt email indicating, unilaterally, that commercial relations between Candela and AE would cease on July 31st, 2024. Walter also unilaterally suspended the demos to be presented with Daniela Lira Diez, having AE's paid the airline ticket and coordinate with different clients. Be clear that at no time did AE express the intention to cease <u>business relations</u> with Candela. Therefore, these unilateral decisions by Candela seriously affect AE.

In good faith, we invite Candela to rethink this matter very carefully without affecting the business relationship of so many years with AE, who have acquired clients whom they have served with excellence and bring excellent profits to your company.

I remain, cordially yours.

S/: Elmer O. Miranda
President & General Manager
AE Medical Technologies, Inc.

# ANEJO 9

 

*Cotización No.: AE23-052R*          *19 de enero de 2024*

*Presentada a:*
*Sra. Sandra Bibiloni & Patricia Bibiloni*
*ABA Beauty Lounge*
*Ave. José de Diego*
*Villas de San Francisco*
*Rio Piedras, PR 00921*

---

*AE Medical Technologies is pleased to submit the following quotation for the preventive maintenance and service contract agreement described herein at prices and terms stated. This offer is subject to your acceptance of the terms and conditions hereof.*

---

### Preventive Maintenance & Service Contract Agreement

*For the period of twenty-four (24) months, commencing October 1, 2023, and expiring September 30, 2025,*
*AE Medical Technologies, Inc. will provide all required service and preventive maintenance to the equipment listed on the Appendix A "ABA BEAUTY LOUNGE LASER SYSTEMS INVENTORY". Schedule as specified in the "Contract Coverage Section", subject to the following terms and conditions.*

*Service Agreement Total Price:$172,212.00\**
*Payment Terms: From 10/1/2023 to 10/31/2023 ($6,102.00) Monthly payment of: $6,102.00 + $701.73 (IVU)= $6,803.73*
*Payment Terms: From 11/1/2023 to 6/30/2024 ($56,952.00) Monthly payment of: $7,119.00 + $818.68 (IVU)= $7,937.68*
*Payment Terms: From 7/1/2024 to 9/30/2025 ($109,158.00) Monthly payment of: $7,797.00 + $896.65 (IVU)= $8,693.65*
*__\* Nota: Según la evaluación de la facturación del contrato pasado (2021-2023), sobre los servicios a los cuatro (4) Láser MGL, se acreditará a este contrato (2023-2025) la cantidad de $14,928.00 menos $3,110.00, que es el total de los 5 meses no facturados de los dos (2) GMax Pro, S/N: 9914-9035-17589 y S/N: 9914-9035-17802, para un crédito neto de $11,818.00. Se acreditará en las facturas sobre el contrato 2023-2025.__*

### Contract Coverage Section

*Coverage Hours:*
*8:00 AM TO 5:00 PM Monday through Friday.  Any service after 5:00 PM or during Saturday, AE Medical Technologies, Inc. will charge $125.00 per hour.*

AE Medical Technologies, Inc., HC72 Box 3766 PMB 278, Naranjito PR, 00719, Tel. 787-979-0053, customerservice@aemedicaltec.com

 

*Preventive Maintenance Inspections:*
*Two (2) Preventive Maintenance inspections on every system per year as per manufacturer's recommendations.*

*Labor Included:*
*Remedial maintenance and labor required to maintain the system at manufacturer's specifications.*

*A flat rate of $450.00 will be charged on the repair of any Hand Piece during the contract. It will include circuit boards and lenses as necessary for MGLase and MGYag. Fiber Optic replacement is not included and it will be charged apart if it is replaced on the repairing.*

*Parts:*
*Parts are not included in this contract. Most preventive maintenance parts, accessories and consumables will be in our inventory for expedited delivery. Some service parts, accessories and consumables will be subject to manufacturer availability.*

*Parts included as courtesy for this contract:*
- *Two (2) FSE Laser Head Assy. of any system during this contract is included.*
- *Ten (10 ea.) 7122-00-9418, 15 mm Distant Gauge Kit for Pro Series*
- *Ten (10 ea.) 7122-00-9424, 18 mm Distant Gauge Kit for Pro Series*

*Travel Expenses:*
*All travel expenses incurred by AE Medical Technologies, Inc.*

*Product Enhancements:*
*All manufacturers authorized software enhancements not requiring hardware modifications or additions. All manufacturers authorized software updates and hardware modifications affecting product safety of equipment as originally purchased.*

*Preventive Maintenance will be scheduled and performed with prior authorization from the customer.*

 

*Accepted, agreed and ordered:*

*Customer Requested Delivery Date:*

March 18, 2024

_____
*Date*

_____
*Purchaser Signature and Title*

_____
*Date*

_____
*AEMT Rep.*

_____
*Date*

*APPENDIX A:* ABA BEAUTY LOUNGE LASER SYSTEMS INVENTORY UNDER SERVICE CONTRACT
** MGL SYSTEMS ARE NOT INCLUDED IN THIS CONTRACT

| LIST NO. | CANDELA LASER MODEL | SERIAL NUMBER | LOCATION | INSTALLED DATE | ABA SYSTEM NO. |
|---|---|---|---|---|---|
| 1 | GL PRO | 9914-9015-0573 | CONDADO | 06/12/2012 | 10 |
| 2 | GMAX PRO | 9914-9035-0243 | CONDADO | 11/10/2012 | 11 |
| 3 | GMAX PRO | 9914-9035-9554 | CONDADO | 06/20/2019 | 19 |
| 4 | GMAX PRO | 9914-9035-15838 | CONDADO | 09/23/2021 | 26 |
| 5 | GMAX PRO | 9914-9035-17589 | CONDADO | 04/29/2022 | 28 |
| 6 | GMAX PRO PLUS (UNDER WARRANTY UNTIL 10/28/23) | 9914-9036-15571 | CONDADO | 10/28/2022 | 29 |
| 7** | MGL | 9914-0880-2281 | DORADO | 2005 | 4 |
| 8 | GMAX PRO | 9914-9035-4765 | DORADO | 08/30/2016 | 14 |
| 9 | GMAX PRO | 9914-9035-15120 | DORADO | 03/08/2021 | 22 |
| 10 | GMAX PRO PLUS (UNDER WARRANTY UNTIL 10/28/23) | 9914-9036-15562 | DORADO | 10/28/2022 | 30 |
| 11 | GMAX PRO PLUS (UNDER WARRANTY UNTIL 6/22/24) | 9914-9035-20071 | DORADO | 06/22/2023 | 32 |
| 12** | MGL | 9914-0880-1744 | RIO PIEDRAS | 08/23/2004 | 3 |
| 13** | MGL | 9914-0880-3612 | RIO PIEDRAS | 09/12/2007 | 5 |
| 14** | MGL | 9914-0880-5261 | RIO PIEDRAS | 03/22/2011 | 8 |
| 15 | GMAX PRO | 9914-9035-1265 | RIO PIEDRAS | 07/15/2014 | 13 |
| 16 | GMAX PRO | 9914-9035-1122 | RIO PIEDRAS | 02/15/2017 | 15 |
| 17 | GMAX PRO | 9914-9035-7324 | RIO PIEDRAS | 05/30/2018 | 16 |
| 18 | GMAX PRO | 9914-9035-7482 | RIO PIEDRAS | 06/12/2018 | 17 |
| 19 | GMAX PRO | 9914-9035-7489 | RIO PIEDRAS | 06/12/2018 | 18 |
| 20 | GMAX PRO | 9914-9035-13508 | RIO PIEDRAS | 07/06/2020 | 20 |




| 21 | GMAX PRO | 9914-9035-11148 | RIO PIEDRAS | 01/25/2021 | 21 |
| 21 | GMAX PRO | 9914-9035-15847 | RIO PIEDRAS | 09/23/2021 | 23 |
| 23 | GMAX PRO | 9914-9035-15832 | RIO PIEDRAS | 09/23/2021 | 24 |
| 24 | GMAX PRO | 9914-9035-15780 | RIO PIEDRAS | 09/23/2021 | 25 |
| 25 | GMAX PRO | 9914-9035-17802 | RIO PIEDRAS | 04/29/2022 | 27 |
| 26 | GMAX PRO PLUS (UNDER WARRANTY UNTIL 10/28/23) | 9914-9036-15563 | RIO PIEDRAS | 10/28/2022 | 31 |
| 27 | GMAX PRO PLUS (UNDER WARRANTY UNTIL 6/22/24) | 9914-9036-16354 | RIO PIEDRAS | 06/22/2023 | 33 |

# ANEJO 10

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| AE Medical Technologies, Inc., | CIVIL NO. 3:24-cv-001286-SCC-GLS |
| Plaintiffs | |
| v. | RE: INJUNCTION RELIEF |
| Candela Corporation, | |
| Defendant | |

### JOINT MOTION INFORMING A TEMPORARY SETTLEMENT

The parties to the above captioned case through their respective attorneys jointly inform the court as follows:

1. The parties have met and agreed that the exclusive distribution contract by and between Candela Corporation and AE Medical Technologies, Inc. shall remain in full force and effect and none of the parties to said contract shall attempt to change or modify the terms of said contract until a court of law decrees otherwise.

Therefore, the parties pray the court to take notice of the aforestated and issue an order directing the specific enforcement of the agreement between the parties and cancelling as moot the hearing scheduled for a preliminary injunction scheduled for July 11, 2024.

Respectfully submitted this 9th day of July 2024.

It is here certified that we filed this motion through the Court's ECF system, which will notify all parties of record.

*S/ Ramon L. Walker Merino*
USDC 121907
**WALKER MERINO LAW OFFICE**
P.O. BOX 9023550
SAN JUAN, P.R. 00902-3550
Tel. (787) 340-6640
walker-merino@msn.com

*S/Fernando Van Derdys*
USDC-PR 201913
**REICHARD & ESCALERA, LLC**
Tel. 787-777-8888
fvander@reichardescalera.com

*S/Rubén T. Nigaglioni Mignucci*
USDC-PR No. 119901
**NIGAGLIONI LAW OFFICES, PSC**
P. O. Box 9023865
San Juan, Puerto Rico 00902-3865
Tel. (787)765-9966
Fax (787)751-2520
rtn@nigaglionilaw.com

# ANEJO 11

IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| AE MEDICAL TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CANDELA CORPORATION, INC., <br><br> Defendant. | CIV. NO.: 24-1286 (SCC) |

**OPINION AND ORDER**

Pending before the Court is a motion to dismiss by Defendant Candela Corporation, Inc. ("Candela"). Docket No. 31.

### I. BACKGROUND

Plaintiff AE Medical Technologies, Inc. ("AE Medical") initially sought injunctive relief to "prevent[] the cancellation" of its distribution agreement with Candela. Docket No. 1, pg. 8. It moved for a temporary restraining order ("TRO") and a preliminary injunction on June 25, 2024. *See id.* It filed the complaint, limited to injunctive relief, on June 28. Docket No. 3.

| AE Medical Technologies, Inc. | Page 2 |
|---|---|
| v. Candela Corporation, Inc. | |

That same day, the Court denied the request for a TRO, Docket No. 6, and referred the request for a preliminary injunction to Magistrate Judge López-Soler for a report and recommendation, Docket No. 7. Magistrate Judge López-Soler ordered prompt service of process and response by Candela to the preliminary injunction request and scheduled a hearing for July 11. Docket Nos. 8–9.

On July 9, after service, Docket No. 14, and a response to the preliminary injunction request by Candela, Docket No. 17, the parties filed a joint informative motion stating that they reached a temporary settlement that the distribution agreement "shall remain in full force and effect." Docket No. 18, pg. 1. They also asked for an order "directing the specific enforcement of the agreement" and "cancelling as moot" the hearing. Docket No. 18, pg. 1. Magistrate Judge López-Soler noted and approved the motion. Docket No. 19. She also vacated the hearing and issued a Report and Recommendation ("R&R") "recommend[ing] that the Court adopt the agreement reached by the parties" and "deem [the] request for a preliminary injunction" moot. Docket No. 20.

| AE Medical Technologies, Inc. | Page 3 |
|---|---|
| v. Candela Corporation, Inc. | |

The Court adopted the R&R and found moot the motion for a preliminary injunction. Docket No. 23. Further, given that the parties agreed to abide by the contract and that AE Medical filed suit "because it believed [Candela] intended to unilaterally terminate" the contract, the Court ordered AE Medical to show cause as to why the case ought not to be dismissed as moot. Docket No. 24. The Court also found moot the motion Candela had filed for an extension of time to answer or otherwise plead, Docket No. 22, as whether Candela would have to do so "w[ould] depend on [AE Medical's] response to the Order to Show Cause," Docket No. 25.

AE Medical requested an extension of time to comply with the Order, stating that it intended to meet with Candela and that, if there was no final settlement between them, amend the complaint to seek legal remedies. Docket No. 26. The Court granted the motion. Docket No. 27.

AE Medical and Candela then jointly filed a motion asking for a further extension. Docket No. 28. AE Medical would either "request the voluntary dismissal of the case" or

| AE Medical Technologies, Inc. | Page 4 |
|---|---|
| v. Candela Corporation, Inc. | |

"amend the complaint." *Id.* at ¶ 1. The Court granted the motion. Docket No. 29.

AE Medical filed an amended complaint. Docket No. 30. Candela moved to dismiss the amended complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Docket No. 31. AE Medical filed an opposition. Docket No. 32. Candela replied, Docket No. 38, after timely seeking leave to do so, Docket No. 37, a request the Court granted, Docket No. 39. AE Medical surreplied, Docket No. 42, after also seeking leave, Docket No. 40, which the Court granted, Docket No. 41. The motion to dismiss is thus fully briefed and ripe for disposition.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Under Rule 12(b)(6), "a party may assert," as Candela has done, "by motion . . . failure to state a claim upon which relief can be granted." Lest it be dismissed, the amended complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

| AE Medical Technologies, Inc. | Page 5 |
|---|---|
| v. Candela Corporation, Inc. | |

The Court "accept[s] as true all well-pleaded facts set out in the [amended] complaint and indulge[s] all reasonable inferences in favor of [AE Medical]." *SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010). It "draw[s] the facts from the [amended] complaint, documents attached to or fairly incorporated into the [amended] complaint, facts susceptible to judicial notice, and concessions in [AE Medical's] response to the motion to dismiss." *Cheng v. Neumann*, 51 F.4th 438, 441 (1st Cir. 2022) (cleaned up). Finally, the Court "credit[s] neither conclusory legal allegations nor factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 33–34 (1st Cir. 2022) (cleaned up).

AE Medical invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332. The Court "must apply the substantive law of Puerto Rico." *Rodríguez v. Señor Frog's de la Isla, Inc.*, 642 F.3d 28, 36 (1st Cir. 2011). And it must do so "exactly as a [Puerto Rico] court would." *Alexandre v. Nat'l Union First Ins. Co.*, 22 F.4th 261, 271 (1st Cir. 2022).

| AE Medical Technologies, Inc. | Page 6 |
| v. Candela Corporation, Inc. | |

### III. ANALYSIS

The Court starts with a rather rudimentary issue. It is not immediately apparent from the amended complaint what AE Medical's causes of action are.

Following the "jurisdiction," Docket No. 30 ¶¶ 1–2, and "facts" sections, *id.* at ¶¶ 3–10, there is a section on "tortious interference," *id.* at ¶¶ 11–27, which is followed by the last section, titled "damages," *id.* at ¶¶ 28–31. There, AE Medical alleges $1 million in damages under Article 1536 of the Puerto Rico Civil Code for "tortuous, malicious and interference [sic]," *id.* at ¶ 30. But it also alleges more than double that in damages under the Puerto Rico Dealers Act. *Id.* at ¶ 29. There is no separate section in the amended complaint as to the Dealers Act, unlike with tortious interference.

It is "reasonably clear" that the Federal Rules of Civil Procedure do not require "us[ing] separate counts to state different theories of recovery or to seek relief under separate statutory provisions." Wright & Miller, 5A Federal Practice and Procedure § 1324 (4th ed. 2025 update). The pleader, though, "may choose to do so for clarity or out of caution." *Id.*

AE Medical did not exercise caution. Still, it is rather clear that it is under both the Dealers Act and Article 1536 that AE Medical brought suit. The Court proceeds on that basis.

### A. Dealers Act

The Dealers Act, or Law 75, "governs the business relationship between principals and the locally appointed distributors who market their products." *Caribe Indus. Sys. v. National Starch & Chem. Co.*, 212 F.3d 26, 29 (1st Cir. 2000). Under Section 278a, "[n]otwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate the existing relationship, no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for just cause." 10 L.P.R.A. § 278a. The Act, in other words, covers both unilateral termination and "conduct of a principal 'detrimental to the established relationship,' even where the contract was not terminated." *Caribe*, 212 F.3d at 29.

"[C]onduct detrimental to the distribution relationship" means "'whether the terms of the contract

AE Medical Technologies, Inc.                                    Page 8
v. Candela Corporation, Inc.

existing between the parties have been impaired.'" *Id.*
(quoting *Vulcan Tools of P.R. v. Makita U.S.A., Inc.*, 23 F.3d 564,
569 (1st Cir. 1994)).[1] Termination, on the other hand, means
just that: a "unilateral[] end [to] the relationship." *Id.*

It is undisputed that Candela is a principal and AE
Medical a local distributor and that their agreement falls
under the Dealers Act. *See* Docket No. 30, ¶¶ 3, 9; Docket No.
31, pg. 1. But which of unilateral termination or detrimental
conduct AE Medical is alleging Candela committed is hard to
discern from AE Medical's confused pleadings. AE Medical
speaks of a continuing relationship. *See* Docket No. 30, pg. 9
("[T]he distributorship relationship is still in effect and has
not been cancelled."). At the same time, it accuses Candela of
"unilateral cancellation." *Id.* at ¶ 26.

AE Medical's own exhibits show a continuing
relationship. *See, e.g.*, Docket Nos. 30-8. "It is a well-settled

_____

[1] *See also Goya de Puerto Rico, Inc. v. Rowland Coffee*, 206 F.Supp.2d 211, 216–
17 (D.P.R. 2002) ("The term detrimental' which appears in the English
version of the statute is a translation for 'menoscabo' which is
synonymous of the words 'impairment,' 'diminution,' 'deterioration,' or
'undermining.'") (citing Simon and Schuster's International Dictionary
1348, Part II: Spanish–English (1973)).

| AE Medical Technologies, Inc. | Page 9 |
| v. Candela Corporation, Inc. | |

rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Yacubian v. United States*, 750 F.3d 100, 108 (1st Cir. 2014) (cleaned up). AE Medical, in other words, cannot allege unilateral termination when its own exhibits, not to mention parts of its pleadings, allege impairment. *See Cheng*, 51 F.4th at 445. The Court determines that AE Medical is alleging impairment by Candela.

The "parameters" of AE Medical's rights "are established by the terms" of its contract with Candela. *Caribe*, 212 F.3d at 29. Indeed, the Act "only protects against detriments to contractually acquired rights." *Id.* (quoting throughout *Vulcan Tools*, 23 F.3d at 569).

AE Medical provided the contract as an exhibit to both the original, Docket No. 3-3, and the amended complaints, Docket No. 30-1. Candela treats the document as the relevant contract. *See* Docket No. 38, pg. 8 n. 24. The Court proceeds on that basis.

As with other matters highlighted above, AE Medical is most unclear on which provisions of its contract it is relying.

| AE Medical Technologies, Inc. | Page 10 |
|---|---|
| v. Candela Corporation, Inc. | |

The amended complaint cites to the contract once, to assert simply that there is a "distribution contract" between Candela and AE Medical under which the former is the "principal" and the latter "the exclusive distributor for the Commonwealth of Puerto Rico of Candela's products." Docket No. 30, ¶ 3. There is no further elaboration in the amended complaint as to which provisions of the contract are relevant. Neither the opposition to the motion to dismiss nor the surreply provide any illumination.

"[A] litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (quoting *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988)). Courts are not "to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Id.* Accordingly, courts have dismissed contract and tortious interference claims for failure to cite to a particular contractual provision. *See, e.g., Quality Res., Inc. v. Pfizer, Inc.*, 14-cv-1149-CEJ, 2015 WL 417997, at * 4 (E.D. Mo. Jan. 30, 2015), aff'd, 622 F. App'x 606 (8th Cir. 2015); *MRG Construction*

| AE Medical Technologies, Inc. | Page 11 |
| v. Candela Corporation, Inc. | |

*Corp. v. CBS Service,* LLC, 23-cv-241-MGG, 2024 WL 2049467, at * 6 (N.D. Ind. May 8, 2024).

If AE Medical's pleadings were otherwise clear, the Court might have been inclined to look at the contract and discern by itself the contractually acquired rights AE Medical thinks violated. *See Knox v. Vanguard Group, Inc.*, 15-cv-13411-FDS, 2016 WL 1735812, at * 4 (D. Mass. May 2, 2016); *Ankor Energy LLC v. Merit Management Partners I, L.P.,* 24-cv-1953, 2024 WL 5246761, at * 2 (E.D. La. Dec. 30, 2024). But AE Medical's pleadings are far from clear.

Pleading impairment requires pleading "detriments to contractually acquired rights." *Caribe*, 212 F.3d at 29 (quoting throughout *Vulcan Tools*, 23 F.3d at 569). AE Medical does not cite to contractually acquired rights. The Court cannot "play archaeologist with the record." *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) (Easterbrook, J.).

### B. Article 1536

Article 1536 was introduced by the 2020 Civil Code. *Sandoval v. Hospital Oriente, Inc.*, --- F.Supp.3d ----, 2025 WL 814964, at * 9 n. 1 (D.P.R. 2025). The 2020 Civil Code "has yet

| AE Medical Technologies, Inc. | Page 12 |
| v. Candela Corporation, Inc. | |

to be officially translated into English." *Seda-Rodríguez v. Centro Médico Episcopal San Lucas Ponce, Inc.*, 23-cv-1207-ADC, 2025 WL 1159070, at * 1 n. 1. (D.P.R. Mar. 26, 2025). No translation has been furnished. In any event, "Article 1536 contains the same elements as its predecessor," Article 1802, and "[a]ll caselaw analyzing Article 1802 remains in effect and will be applied to any actions brought pursuant to Article 1536." *Sandoval*, 2025 WL 814964, at * 9 n. 1 (cleaned up).

"Article 1802 'generally does not apply in the context of commercial transactions.'" *Lebron v. Reyes Rosado*, 24-cv-1045-SCC, 2025 WL 89140, at * 6 (D.P.R. Jan. 14, 2025) (quoting *Linares-Acevedo v. Acevedo*, 38 F. Supp. 3d 222, 228 (D.P.R. 2014)). But the Puerto Rico Supreme Court has recognized a cause of action for tortious interference under Article 1802. *A.M. Capen's Co., Inc. v. Am. Trading & Prod. Corp.*, 200 F. Supp. 2d 34, 48 (D.P.R. 2002) (citing *General Office Products v. A.M. Capen's Sons*, 15 P.R. Offic. Trans. 727, 1984 WL 270915 (1984)). And it has also found Article 1802 applicable to an exclusive distributorship agreement under the Dealers Act, at least as long as "high ranking public interests" do not "prevent it." *Id.*

| AE Medical Technologies, Inc. | Page 13 |
| v. Candela Corporation, Inc. | |

(quoting throughout *General Office Products*, 15 P.R. Offic. Trans. at 734–35).

It is unclear whether AE Medical is accusing Candela of tortiously interfering with their contract or with contracts AE Medical has with third parties. *See* Docket No. 30, ¶¶ 11–26, 30. Either way, AE Medical fails to state a claim.

Tortious interference requires "a contract with which a third party interferes," that "the third party [is] at fault," that "the contracting party . . . suffer[s] damages," and that the damages are "a result of the third party's interference." *Sterling Merch., Inc. v. Nestle, S.A.*, 546 F. Supp. 2d 1, 3 (D.P.R. 2008). Three of the four elements involve a third party, in other words. There is no liability for tortious interference with one's own contract under Puerto Rico law. That a third party is required "[c]ourts consistently hold." *Pelegrina Med., Inc. v. Philips Med. Sys. Nederland, B.V.*, 13-cv-1107-FAB, 2013 WL 12409305, at * 6 (D.P.R. July 23, 2013).

As to interference by Candela with contracts AE Medical may have with third parties, AE Medical fails to state a claim here as well. Tortious interference under Puerto Rico

| AE Medical Technologies, Inc. | Page 14 |
| v. Candela Corporation, Inc. | |

law requires a fixed-term contract that is not terminatable at will. *R.R. Isla Verde Hotel Corp. v. Howard Johnson Int'l, Inc.*, 121 Fed.Appx. 870, 871 (1st Cir. 2005). In its amended complaint, AE Medical does not plead fixed-term contracts. In the opposition, AE Medical even states that "[t]his is not a basis for dismissal because. During [sic] the discovery [it] will totally prove [fixed-term contracts with third parties]." Docket No. 32, pg. 17. But failure to plead that third-party contracts are for a fixed term does mean dismissal. *See, e.g.*, *Triangle Cayman Asset Company v. LG & AC, Corp.*, 16-cv-2863-FAB-BJM, 2018 WL 10581533, at * 8 (D.P.R. June 28, 2018). So it must here.

### C. A Final Matter from the Briefing

"Fortunately," says AE Medical, "the legal threshold" to "clear" a motion to dismiss under Rule 12(b)(6) "is rather low." Docket No. 32, pg. 2. It "respectfully stresses that once this Honorable Court takes the facts alleged in the amended complaint and second amended complaint as true, denying [Candela's] motion becomes a straightforward matter," and AE Medical is thus entitled to discovery. *Id.* at pg. 23.

| AE Medical Technologies, Inc. | Page 15 |
| v. Candela Corporation, Inc. | |

The Court cannot "take[] the facts alleged in the . . . second amended complaint as true" because a second amended complaint does not exist. And unfortunately for AE Medical, the Rule 12(b)(6) threshold is not nonexistent. The Court has "take[n] the facts alleged in the amended complaint . . . as true." It fails to state a claim upon which relief can be granted. The Court thus cannot "unlock the doors of discovery." *Iqbal*, 556 U.S. at 679.

### D. Dismissal

Dismissal for failure to state a claim is generally with prejudice. *See United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 241 (1st Cir. 2004). That has to be the case with the Article 1536 claim. It is blackletter Puerto Rico tortious interference law that one cannot tortiously interfere with one's own contract and that to state a claim there is an obligation to plead that third-party contracts are for a fixed term, and AE Medical was on notice by Candela's motion. *See Emerito Estrada Rivera-Isuzu de P.R., Inc. v. Consumers Union of U.S., Inc.*, 233 F.3d 24, 30–31 (1st Cir. 2000). AE Medical was also on notice by the judgment against it for those exact same

| AE Medical Technologies, Inc. | Page 16 |
| v. Candela Corporation, Inc. | |

reasons in another case it brought in this District just a few years ago. *See AE Medical Technologies, Inc. v. Philips Med. Sys. Nederland B.V.*, 21-cv-1409-ADC, Docket No. 39 (D.P.R. Aug. 16, 2022); Docket No. 42, ¶ 2 (AE Medical stating that it did file that case). Accordingly, the Article 1536 claim will be dismissed with prejudice.

But the Dealers Act claim will be dismissed without prejudice. Because of AE Medical's unclear filings, the Court could not "pass[] directly on the substance of [the Dealers Act] claim." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 501–02 (2001) (cleaned up). This dismissal "is not to be read as an invitation to amend." *Mirpuri v. ACT Mfg., Inc.*, 212 F.3d 624, 628 (1st Cir. 2000). *See also Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 247 (1st Cir. 2015) ("We wish to discourage this practice of seeking leave to amend after the case has been dismissed."). Rather, it means that this dismissal does not preclude another lawsuit under the Dealers Act in this District or elsewhere. *Mirpuri*, 212 F.3d at 628.

| AE Medical Technologies, Inc. | Page 17 |
|---|---|
| v. Candela Corporation, Inc. | |

### IV. CONCLUSION

AE Medical failed to state a claim. The motion at Docket No. 31 is **GRANTED**. AE Medical's Article 1536 claim is **DISMISSED WITH PREJUDICE**. AE Medical's Dealers Act claim is **DISMISSED WITHOUT PREJUDICE**. Judgment to enter.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 13th day of May 2025.

<u>S/ SILVIA CARREÑO-COLL</u>
UNITED STATES DISTRICT COURT JUDGE

# ANEJO 12



Elmer Miranda <emiranda@aemedicaltec.com>

---

## AE Medical Bi Weekly Distributor Meeting

**Walter Guevara** <walterg@candelamedical.com>                                      Tue, Aug 20, 2024 at 2:55 PM
To: "emiranda@aemedicaltec.com" <emiranda@aemedicaltec.com>, "jmiranda@aemedicaltec.com" <jmiranda@aemedicaltec.com>, Gabriela DiCesare <gabriela.dicesare@candelamedical.com>, Rob Blood <robb@candelamedical.com>
Cc: Antonio Zorro <antonioz@candelamedical.com>, Jorge Ricardo Mojica Ramos <jorger@candelamedical.com>, Daniela Lira Diez <daniela.diez@candelamedical.com>



2024 Quota 500,000

Sales

Forecast

Marketing

Regulatory

AR

Training

Service

---

📄 **invite.ics**
3K

# ANEJO 13

---

## Training Frax
16 messages

**Nancy Marrero** <nancymarrero81@gmail.com>                                                      Wed, Oct 2, 2024 at 11:02 AM
To: emiranda@aemedicaltec.com, Daniela Lira Diez <daniela.diez@candelamedical.com>

Saludos Sr. Miranda
Recientemente adquirí el Frax 1940 para el Nordlys que había adquirido el pasado año junto con el Matrix. Había dialogado con Amaury para entrenamiento de ese Frax ya que tenemos muchas dudas. Me había comentado que si, pero al momento no he recibido ninguna notificación. Si es posible usted me deje saber que se puede hacer al respecto. Muchas gracias.
Dra. Nancy Marrero
Bella Esthetics

---

**Elmer Miranda, AE Medical Technologies, Inc.** <emiranda@aemedicaltec.com>                        Wed, Oct 2, 2024 at 12:01 PM
To: Nancy Marrero <nancymarrero81@gmail.com>
Cc: Daniela Lira Diez <daniela.diez@candelamedical.com>

Saludos Dra. Marrero,

Habíamos coordinado el entrenamiento para el Frax 1940 del Nordlys con Daniela Lira Diez, pero se canceló el viaje por causas ajenas a nuestra voluntad. Hemos hecho gestiones para que Candela autorice y se pueda re-coordinar nuevamente la visita de la Sra. Diez o cualquier otro aplicacionista. Me gustaría saber si podemos adelantar y coordinar un entrenamiento virtual con algún aplicacionista que provea Candela para así tratar de cubrir algunas de las dudas hasta que se autorice la visita presencial y cubrirlas en su totalidad, como usualmente acostumbra hacer AE Medical para beneficio de sus clientes. Quedo a la espera de su respuesta.

Cordialmente,

Elmer Miranda
Presidente & Gerente General
AE Medical Technologies, Inc.
[Quoted text hidden]

---

**Elmer Miranda, AE Medical Technologies, Inc.** <emiranda@aemedicaltec.com>                        Wed, Oct 2, 2024 at 12:23 PM
To: Walter Guevara <walterg@candelamedical.com>, Robert Fielitz <robertf@candelamedical.com>

Mr. Guevara and Mr. Fielitz

I am forwarding the email received by one of our clients, Dr. Marrero and our response. As you can see, as anticipated by AE, the cancellation of the visit of Ms. Diez provoke a directly request of one of the clients who should be visited on June, who needed the clinical applications for the operation of the Nordlys Frax 1940, which is not convenient to our business. We are asking that this situation be resolved immediately. For this reason, I am requesting again the visit of an applicacionist to re-coordinate the visits and demonstrations that were cancelled. I will wait for your prompt response.

Cordially,

Elmer Miranda
Presidente & Gerente General
AE Medical Technologies, Inc.

[Quoted text hidden]

---

**Walter Guevara** <walterg@candelamedical.com>                                                   Wed, Oct 2, 2024 at 12:29 PM
To: "Elmer Miranda, AE Medical Technologies, Inc." <emiranda@aemedicaltec.com>, Robert Fielitz <robertf@candelamedical.com>
Cc: Lora Teska <lorat@candelamedical.com>

Robert please advise

---

**Elmer Miranda, AE Medical Technologies, Inc.** <emiranda@aemedicaltec.com>                        Mon, Oct 7, 2024 at 12:45 PM
To: Nancy Marrero <nancymarrero81@gmail.com>

Estimada Dra. Marrero,
Como Candela no ha autorizado al día de hoy nuevamente a la experta de aplicaciones clínicas para Latinoamérica Sra. Díez a viajar presencialmente a Puerto Rico, procedimos a contactar al Sr. David Rubio, Director de Aplicaciones Clínicas de Candela Medical para atender lo antes posible sus necesidades y dudas sobre el FRAX 1940. También le llamamos a usted en varias ocasiones para dejarle saber las gestiones que estábamos realizando y las fechas obtenidas propuestas por el Sr. Rubio. Deberá escoger entre los días 28, 29 o 30 de octubre de 2024 para dicho entrenamiento virtual. Cuando Candela autorice la presencia de su experta en aplicaciones Sra. Díez también le dejaremos saber para que aclare cualquier duda. En la eventualidad que ahora, luego de contactar al Sr. Rubio Candela provea una fecha para la visita de la Sra. Díez antes de las provistas por el Sr. Rubio, de todas maneras podrá contactarle el día que escoja para aclarar las dudas que aún pueda tener. Por tanto, le mantendremos informada. Nuestras excusas por cualquier inconveniente que dicha tardanza haya ocasionado. Espero su respuesta lo antes posible para coordinar y confirmarle al Sr. Rubio.
Cordialmente,
Elmer Miranda

# ANEJO 14

**Robert Fielitz** <robertf@candelamedical.com>                                                                                      Mon, Oct 14, 2024 at 6:23 PM
To: "Elmer Miranda, AE Medical Technologies, Inc." <emiranda@aemedicaltec.com>
Cc: "nancymarrero81@gmail.com" <nancymarrero81@gmail.com>, Daniela Lira Diez <daniela.diez@candelamedical.com>, Robert Fielitz <robertf@candelamedical.com>, Antonio Zorro <antonioz@candelamedical.com>

Dear Elmer,

As previously explained, it is AE Medical's responsibility to maintain its own clinical trainers and have them attend training at Candela's facilities, as well as maintaining appropriate personnel and resources to meet AE Medical's training obligations to customers.  It is not Candela's responsibility to supply trainers to AE Medical. Please note that this is clearly spelled out in your Distributor Agreement.

As we previously requested, please send us the names and past experience of the trainers AE Medical wishes to have trained at Candela's facilities (at AE Medical's expense) and we can let you know when the next trainings are available.

Regardless, Daniela is not an employee of Candela.  If AE Medical wishes to contract with Daniela directly for training, AE Medical is free to reach out to Daniela to see if she is willing to contract with AE Medical directly for services and at whatever fees/rates/expense reimbursement terms AE Medical and she agree, which will be AE Medical's sole responsibility to pay. Chances are high, that she will want to be paid in advance.  She will also require a safe hotel to say in.  She was concerned about the last place you had her stay.

According to Service Max, you have not installed the Nordlys system.  Why is training needed on a system you have not installed?

I look forward to your response.

Robert

**Robert Fielitz**

**Vice President of Distributor Operations**

**CANDELA**



Elmer Miranda <emiranda@aemedicaltec.com>

## Training Frax

**Elmer Miranda, AE Medical Technologies, Inc.** <emiranda@aemedicaltec.com>          Mon, Oct 14, 2024 at 9:47 PM
To: Robert Fielitz <robertf@candelamedical.com>
Cc: Daniela Lira Diez <daniela.diez@candelamedical.com>, Robert Fielitz <robertf@candelamedical.com>, Antonio Zorro
<antonioz@candelamedical.com>

Mr. Fielitz,
Please refer to the attached letter.
Sincerely,

*ELMER O. MIRANDA*

*PRESIDENTE & GERENTE GENERAL*

*AE MEDICAL TECHNOLOGIES, INC.*

[Quoted text hidden]

---

📄 **Letter to Mr. Robert Fielitz, Candela Medical.pdf**
270K



October 14, 2024

Mr. Robert Fielitz
Vice President of Distributor Operations
CANDELA MEDICAL
US Mobile: +1.443.223.9637
robertf@candelamedical.com

C: Antonio Zorro - antonioz@candelamedical.com
    Daniela Diez- daniela.diez@candelamedical.com

Mr. Fielitz,

I just received your email. First, you had copy AE's client Dra. Marrero with the email above which is a serious tortious interference and bad faith against AE business.  You shall immediately cease these actions against AE.

Second, although I am not surprised, I must point out that Candela's communication was to be expected since Candela has been dramatically changing the way business with AE had been conducted despite the many years of good relations with AE as the exclusive distributor in Puerto Rico.

This is the first time in all the years of business dealings with Candela that AE has been denied the support of an application expert to follow up the clients' needs. I assume the reason is because Candela is trying to find a way to cancel the contract since Candela was unable to do so unilaterally and illegally on July 1st.

I am copying the specific clause of the contract that you are failing to comply with, so that you can use it as a reference.

> 3.5.7   Course Costs: Candela shall provide all Courses free of charge. Distributor shall bear all costs and expenses of its personnel participating in the Courses, including without limitation, travel, accommodations and salary expenses. In the event that Distributor and Candela agree that any of the Courses will be held at a location proposed by Distributor, then Distributor shall pay for Candela's travel and related expenses for accommodations, transportation and food for such location(s),

I understand that the relationship with Candela has become serious harassment against AE and I invite you to leave this behind and focus on giving the support that you always gave in the past, mainly to the clients who have supported you for years. I understand that this attitude does not help commercial relations at all.

Before Mr. Guevara's from Candela unilaterally wanted to cancel the contract against Puerto Rico Distributor's law, Diez's visit had been coordinated between Candela and AE, as usual in the past. Why has it changed? Candela is continually interrupting and interfering with the business of AE and its clients, which is a very regrettable fact.
.

AE Medical Technologies, Inc., HC72 Box 3766 PMB 278, Naranjito PR, 00719, Tel. 787-979-0053, emiranda@aemedicaltec.com



Furthermore, there is not correct that there is no Nordlys equipment installed in Puerto Rico, since there is a Nordlys already installed in the offices of Dra. Marrero and she bought a Frax 1940 application recently and need some additional clinical training.

You should contact Dra. Marrero and let her know how Candela is changing the rules, since I will not allow AE's name to continue to be affected by Candela.  If you don't cooperate with this, you will be acting seriously in bad faith and against Law 75.

Finally, you gave AE incorrect information that was copied to one of our clients. Mr. Diez is the LATAM Clinical Manager as is the information below.

**Daniela Lira Diez** | LATAM Clinical Manager
**CANDELALATAM**
T: +56 9 30312088
daniela.diez@candelamedical.com|  www.candelamedical.com

S/: Elmer O. Miranda
President & General Manager
AE Medical Technologies, Inc.

# ANEJO 15

## LEADS RECEIVED BY CANDELA 2024 & 2025

LEADS RECEIVED BY CANDELA 01/2024

1. 1-4-2024 (1), LEAD CANDELA DE WALTER GUEVARA
2. 1-4-2024 (2), LEAD CANDELA DE WALTER GUEVARA
3. 1-15-2024, LEAD CANDELA DE WALTER GUEVARA
4. 1-23-2024, LEAD CANDELA DE WALTER GUEVARA
5. 1-24-2024, LEAD CANDELA DE WALTER GUEVARA
6. 1-30-2024, LEAD CANDELA DE WALTER GUEVARA

LEADS RECEIVED BY CANDELA 02/2024

1. 2-9-2024, LEAD CANDELA DE WALTER GUEVARA
2. 2-23-2024, LEAD CANDELA DE WALTER GUEVARA
3. 2-26-2024, LEAD CANDELA DE WALTER GUEVARA
4. 2-29-2024 (1), LEAD CANDELA DE WALTER GUEVARA
5. 2-29-2024 (2), LEAD CANDELA DE WALTER GUEVARA
6. 2-29-2024 (3), LEAD CANDELA DE WALTER GUEVARA

LEADS RECEIVED BY CANDELA 03/2024

1. 3-11-2024, LEAD CANDELA DE WALTER GUEVARA
2. 3-12-2024, LEAD CANDELA DE WALTER GUEVARA
3. 3-13-2024, LEAD CANDELA DE WALTER GUEVARA

LEADS RECEIVED BY CANDELA 04/2024

1. 4-5-2024 (1), LEAD CANDELA DE WALTER GUEVARA
2. 4-5-2024 (2), LEAD CANDELA DE WALTER GUEVARA
3. 4-23-2024, LEAD CANDELA DE WALTER GUEVARA
4. 4-24-2024, LEAD CANDELA DE WALTER GUEVARA
5. 4-29-2024, LEAD CANDELA DE WALTER GUEVARA

LEADS RECEIVED BY CANDELA 05/2024

1. 5-13-2024, LEAD CANDELA DE WALTER GUEVARA
2. 5-20-2024, LEAD CANDELA DE WALTER GUEVARA
3. 5-22-2024 (1), LEAD CANDELA DE WALTER GUEVARA
4. 5-22-2024 (2), LEAD CANDELA DE WALTER GUEVARA
5. 5-30-2024, LEAD CANDELA DE WALTER GUEVARA

LEADS RECEIVED BY CANDELA 06/2024

1. NONE

LEADS RECEIVED BY CANDELA 07/2024

1. 7-29-2024, LEAD CANDELA DE WALTER GUEVARA

2.  7-29-2024 (2), LEAD CANDELA DE WALTER GUEVARA

LEADS RECEIVED BY CANDELA 08/2024

1.  8-6-2024, LEAD CANDELA DE WALTER GUEVARA
2.  8-12-2024, LEAD CANDELA DE WALTER GUEVARA
3.  8-23-2024, LEAD CANDELA DE WALTER GUEVARA

LEADS RECEIVED BY CANDELA 09/2024

1.  NONE

LEADS RECEIVED BY CANDELA 10/2024

1.  10-1-2024, LEAD CANDELA DE WALTER GUEVARA
2.  10-2-2024, LEAD CANDELA DE WALTER GUEVARA
3.  10-4-2024, LEAD CANDELA DE WALTER GUEVARA
4.  10-7-2024 (1), LEAD CANDELA DE WALTER GUEVARA
5.  10-7-2024 (2), LEAD CANDELA DE WALTER GUEVARA
6.  10-7-2024 (3), LEAD CANDELA DE WALTER GUEVARA

LEADS RECEIVED BY CANDELA 11/2024 (ROBERT FIELITZ)

1.  NONE

LEADS RECEIVED BY CANDELA 12/2024 (ROBERT FIELITZ OR ANTONIO ZORRO)

1.  NONE

LEADS RECEIVED BY CANDELA 01/2025 (ROBERT FIELITZ OR ANTONIO ZORRO)

1.  1-29-2025, LEAD CANDELA ANTONIO ZORRO

LEADS RECEIVED BY CANDELA 02/2025 (ROBERT FIELITZ OR ANTONIO ZORRO)

1.  2-21-2025, LEAD CANDELA ANTONIO ZORRO

LEADS RECEIVED BY CANDELA 03/2025 (ROBERT FIELITZ OR ANTONIO ZORRO)

1.  3-13-2025, LEAD CANDELA ANTONIO ZORRO
2.  3-29-2025, LEAD CANDELA ANTONIO ZORRO

LEADS RECEIVED BY CANDELA 04/2025 (ROBERT FIELITZ OR ANTONIO ZORRO)

1.  NONE

# ANEJO 16

 **Gmail**

Elmer Miranda <emiranda@aemedicaltec.com>

---

**Exclusive Distributor Letter**

---

**Elmer Miranda, AE Medical Technologies, Inc.** <emiranda@aemedicaltec.com>                Tue, Sep 3, 2024 at 1:36 PM
To: Walter Guevara <walterg@candelamedical.com>

Through this email, I request that Candela send me as soon as possible a letter recognizing AE Medical Technologies as the exclusive distributor of its products in P.R. The financial agencies and customers are requiring this letter in order to provide loans for the purchase of equipment.
Cordially,

--

*ELMER O. MIRANDA*

*GERENTE GENERAL*

*AE MEDICAL TECHNOLOGIES, INC.*

*TEL. (939) 539-1066*

*OFICINA (787) 979-0053*

 **Gmail**

Elmer Miranda <emiranda@aemedicaltec.com>

---

**Exclusive Distributor Letter**

---

**Elmer Miranda, AE Medical Technologies, Inc.** <emiranda@aemedicaltec.com>                Wed, Sep 4, 2024 at 11:07 AM
To: Robert Fielitz <robertf@candelamedical.com>
Cc: Walter Guevara <walterg@candelamedical.com>

Mr. Feilitz,
As Mr. Guevara has not answered our request, through this email, I request that Candela send me as soon as possible a letter recognizing AE Medical Technologies as the exclusive distributor of its products in P.R. The financial agencies and customers are requiring this letter in order to provide loans for the purchase of equipment.
Cordially,

*ELMER O. MIRANDA*

*PRESIDENTE & GERENTE GENERAL*

*AE MEDICAL TECHNOLOGIES, INC.*

*TEL. (939) 539-1066*

 Gmail

Elmer Miranda <emiranda@aemedicaltec.com>

**Exclusive Distributor Letter**

**Walter Guevara** <walterg@candelamedical.com>                                                     Wed, Sep 4, 2024 at 11:26 AM
To: "Elmer Miranda, AE Medical Technologies, Inc." <emiranda@aemedicaltec.com>, Robert Fielitz <robertf@candelamedical.com>
Cc: Lora Teska <lorat@candelamedical.com>, Antonio Zorro <antonioz@candelamedical.com>

Elmer,

I cannot provide you the Letter you have requested.  Your account is now being handled directly by Robert Fleitz and Lora Teska(Candela Counsel).  Robert is currently out of office until next week as he is running the European academy.  I will brief him next week and he will be able to respond to you probably at the end of next week.

Carta recibida originalmente:

 CANDELA
Science. Results. Trust.

September 9, 2024

To Whom It May Concern:

Be it known that AE Medical Technologies, Inc. is the sole distributor of Candela Corporation in the Puerto Rico territory as per the terms of that certain distribution contract dated as of April 1, 2018 and for the products provided therein.

Sincerely,

*Candela*

Candela Corporation

**From: Héctor Reichard** <reichard@reichardescalera.com>
Date: Thu, Sep 5, 2024 at 11:06 AM
Subject: Candela/AE Medical
To: Blanca Agrait <ball@agraitlaw.com>
Cc: rtn@nigaglionilaw.com <rtn@nigaglionilaw.com>, walker-merino@msn.com <Walker-Merino@msn.com>, Fernando Van Derdys <fvander@reichardescalera.com>, Jose Feliciano Boada <feliciano@reichardescalera.com>, Ivette Rodríguez <rodriguezi@reichardescalera.com>

Apreciada compañera: acompaño la carta solicitada de nuestro cliente, descriptiva de la relación de exclusividad contractualmente establecida para la distribución de los productos incluidos en el contrato, a la luz de la existencia de la acción legal radicada por AE y la orden de la juez emitida, según lo estipulado por las partes.

Con afecto,

Héctor

**Héctor Reichard | Partner and Co-Chair of Corporate Department**
**email:** reichard@reichardescalera.com
**Office:** 787-777-8801 **Fax:** 787-765-4225
**Po Box 364148, San Juan, PR 00936-4148**
www.reichardescalera.com

   

**From: Blanca Agrait** <ball@agraitlaw.com>
Date: Fri, Sep 6, 2024 at 10:45 AM
Subject: Re: Candela/AE Medical
To: Héctor Reichard <reichard@reichardescalera.com>
Cc: rtn@nigaglionilaw.com <rtn@nigaglionilaw.com>, walker-merino@msn.com <Walker-Merino@msn.com>, Fernando Van Derdys <fvander@reichardescalera.com>, Jose Feliciano Boada <feliciano@reichardescalera.com>, Ivette Rodríguez <rodriguezi@reichardescalera.com>

Muy estimado Hector.

Conforme te adelanté por vía telefónica en la mañana de hoy, dejo consignado por escrito que Popular Auto y un cliente de EA están solicitando una carta de Candela sobre la exclusividad de AE como Distribuidor para Puerto Rico. Como te exprese previamente, AE no puede aceptar la carta en la que clientes y bancos tengan acceso a información de un litigio que podría continuar en el futuro ante la ilegalidad de haberse cancelado un contrato de exclusividad que nos llevó a solicitar el Injunction conforme la Ley vigente en Puerto Rico. Lo que promovió el acuerdo para evitar el Injunction fue la aceptación de Candela del contrato de exclusividad vigente.

Por tanto, cualquier interferencia torticera colateral que le impida a AE llevar a cabo negocios que beneficien tanto a AE como a Candela, no será responsabilidad de AE, quien está siendo con ello perjudicada de poder vender y cumplir con el contrato.

Te estoy haciendo llegar la única carta que fue suscrita por Candela cuando luego de ser firmado el contrato en el 2018, terceros desde Estados Unidos quisieron entrar al mercado en Puerto Rico ilegalmente. Por tanto, es evidente que la cancelación del contrato ha tenido efectos nocivos para AE. Inclusive la carta tal cual ha sido requerida por tu cliente, precisamente constituye una publicidad de la propia empresa Candela, provocando sobre AE una sombra de dudas.

Quedo a la pronta espera de la carta para evitar que se deje de vender productos ante los rumores provocados por la cancelación ilegal del contrato de Candela por el Sr. Guevara y daños a la reputación de AE.

Estoy disponible la semana entrante para una reunión con todos los presentes de ser necesario de buena fe para evitar que esta situación se convierta en un pleito innecesario, costoso y perjudicial para la reputación de AE en el mercado en Puerto Rico.

Gracias anticipadas por tus gestiones,
Blanca



To Whom it may Concern:

Please take notice that Candela Corporation granted certain distribution rights to AE Medical Technologies, Inc. for the Puerto Rico territory by virtue of a contract dated as of April 1, 2018. The contract identifies the Candela Corporation products subject of the exclusive distribution rights.  On June 28, 2024, AE Medical Technologies, Inc. filed a civil action against Candela Corporation in court.  The parties stipulated, and the court so granted, that the distribution contract by and between Candela Corporation and AE Medical Technologies, Inc. shall remain in full force and effect, and none of the parties to said contract shall attempt to change or modify the terms of said contract, until a court of law decrees otherwise.

Sincerely,

*Candela*

Candela Corporation

# ANEJO 17

---

**Vbeam Pro & Vbeam Perfecta**

**Elmer Miranda, AE Medical Technologies, Inc.** <emiranda@aemedicaltec.com>                    Tue, May 6, 2025 at 10:16 AM
To: Antonio Zorro <antonioz@candelamedical.com>

Saludos Antonio,
Espero estes bien. Necesito lo antes posible precio para el nuevo Vbeam Pro. Por favor incluir la configuración con sus números de catálogos y descripción de los mismos.
También necesitamos saber cual es el futuro del Vbeam Perfecta. ¿Qué tiempo más va a estar en el mercado? El cliente conoce este sistema e igualmente está interesado.
Tengo un cliente muy interesado. Queremos saber qué alternativa le podemos cotizar.
Quedo a la espera de tu respuesta.
Cordialmente,
Elmer Miiranda

--

*ELMER O. MIRANDA*

*PRESIDENTE & GERENTE GENERAL*

*AE MEDICAL TECHNOLOGIES, INC.*

*TEL. (939) 539-1066*

*OFICINA (787) 979-0053*

CONFIDENTIALITY NOTE: The above communication contains confidential and/or legally privileged information and it is only for the use of the above named individual or entity. If you are not the intended recipient, you are notified that any disclosure, copying, distribution or the taking of any action related to the information and contents of said information, is strictly prohibited. In the event that you have received this communication by error, please notify us immediately, destroy it, and delete it from your computer.

Esta comunicación contiene información confidencial y-o legalmente privilegiada y es solo para el uso de los individuos y-o entidades nombradas. Si usted no es la persona o entidad nombrada, queda notificado que cualquier divulgación, copia o distribución de esta información está estrictamente prohibida.  En la eventualidad que haya recibido esta comunicación por error, por favor notífíquenos de inmediato, destrúyala y bórrela de su computadora.

---

**Vbeam Pro & Vbeam Perfecta**

**Antonio Zorro** <antonioz@candelamedical.com>                    Tue, May 6, 2025 at 10:49 AM
To: "Elmer Miranda, AE Medical Technologies, Inc." <emiranda@aemedicaltec.com>

Saludos Elmer,

Empezaremos a recibir las primeras unidades Vbeam Pro de producción en Julio. Se presentó en el ASMLS en Orlando y recibimos 21 pedidos.

Hasta ahora tenemos equipos de demo en clínicas en USA con muy buenos resultados.

Yo creo que estarán disponibles las primeras unidades en Octubre. Voy a preguntar el precio y si existe algún acuerdo de intercambio con los Vbeam perfecta e imagino que seguiremos dando servicio 2 o 3 años más.

Cordialmente,

**Antonio Zorro**

Sr. Service Manager LATAM & Service Training

**CANDELA**

M: +34 661 72 90 83| www.candelamedical.com



### Vbeam Pro & Vbeam Perfecta

**Elmer Miranda, AE Medical Technologies, Inc.** <emiranda@aemedicaltec.com>                    Thu, May 15, 2025 at 9:58 AM
To: Antonio Zorro <antonioz@candelamedical.com>

Saludos Antonio,
¿Has logrado trabajar la propuesta con la configuración del Vbeam Pro? El cliente está esperando la misma. Tan pronto la tengas me la envías para preparar la cotización y entregarla al cliente. Por favor me incluyes el brochure.
Cordialmente,
Elmer Miranda
[Quoted text hidden]

---

### Vbeam Pro & Vbeam Perfecta

**Antonio Zorro** <antonioz@candelamedical.com>                    Fri, May 16, 2025 at 12:34 PM
To: Elmer Miranda <emiranda@aemedicaltec.com>

Saludos Elmer,

Tenemos el VBeam Perfecta a 61K USD en stock que hay que retirar desde Bruselas Bélgica para esquivar el 25% de aranceles de Trump, que además se fabrica en suiza.
El VBeam Pro se ha presentado en el ASLMS en Orlando y ya hemos recibido 21 órdenes de compra, pero no empieza a fabricarse hasta el mes que viene, por lo que no llegará hasta octubre o noviembre, y hay un requisito indispensable que tienen que formarse los ingenieros, pero hay tiempo. Sabes que es una plataforma con DYE y YAG, con 50% más de energía y mayor spot. Hemos probado en 5 KOLs en USA y el comportamiento del dye es muchísimo mejor ya que trabaja a una menor temperatura y ya han hecho 100mil disparos y no lo hemos cambiado porque tiene una buena eficiencia. En USA se vende a 179K USD y se venderá a nuestros socios a 120K USD habiendo posibilidad de descuentos recomprando antiguos equipos VBeam perfecta o Prima.
El precio es elevado pero al menos tiene la posibilidad de elegir entre VBeam perfecta o VBeam pro. A mitad de 2026 se fabricarán VBeam pro solo con Dye y será más económico.

Quedo a tu disposición para cualquier aclaración

Cordialmente
Antonio

---

### Re: [External] Vbeam Pro & Gmax Pro
2 messages

**Elmer Miranda** <emiranda@aemedicaltec.com>                    Tue, May 27, 2025 at 11:27 AM
To: Antonio Zorro <antonioz@candelamedical.com>

Saludos Antonio,
Ya se presentó la propuesta a nuestro cliente del Vbeam Pro y como ya le había comunicado, también ya se le había cotizado, por separado, un Gmax Pro. Quieren saber lo antes posible como mejorar la propuesta si adquieren los dos sistemas. Déjame saber qué descuento puedes ofrecer con la orden de estos dos equipos. Necesito saber de donde se despachará el Vbeam Pro. Esto es bien importante por el tema arancelario que estamos viendo y afecta directamente los costos.
Definitivamente, de venderse el Vbeam Pro, tenemos que adiestrar a nuestro personal técnico, preferiblemente en idioma español.
Adicional a esto, pues tendría que venir un aplicacionista clínico de Candela para adiestrar a los dermatólogos. Esto también afectará el costo, por lo que necesito saber en qué tiempo se pueden adiestrar los dermatólogos. Actualmente son siete dermatólogos en dos centros.
Por último cuánto sería el costo de los componentes para el mantenimiento preventivo de la parte del dye.
Este cliente es cliente de nosotros, desde 2007,  con equipos de depilación Candela.
Espero tu respuesta.
Cordialmente,
Elmer Miranda

---

### Re: [External] Vbeam Pro & Gmax Pro

**Elmer Miranda, AE Medical Technologies, Inc.** <emiranda@aemedicaltec.com>                    Tue, Jun 17, 2025 at 5:21 PM
To: Antonio Zorro <antonioz@candelamedical.com>

Buena tarde Antonio,

Desde el 27 de mayo del 2024 que te escribí el correo aquí contenido no he recibido tu respuesta para los precios requeridos para la venta de dos equipos Candela.  Esta tardanza afecta a AE Medical en las ventas programadas de equipos en Puerto Rico.  Por ello te solicito:

Primero, que me dejes saber que es lo que sucede para que no haya respuesta alguna a esta petición, a pesar de la existencia de un contrato de exclusividad vigente entre Candela y AE.
Segundo, se me provea la información solicitada para poder comunicar la misma al cliente.

Candela no está cooperando desde hace tiempo con AE, incrementándose esta conducta luego de un acuerdo llegado en la Corte Federal bajo la Ley 75, una Ley Especial de Puerto Rico que  impone al principal respetar sin modificar los contratos de distribución en nuestra jurisdicción.

Espero una pronta respuesta.

Quedo,

Elmer Miranda

## Re: [External] Vbeam Pro & Gmax Pro

**Elmer Miranda, AE Medical Technologies, Inc.** <emiranda@aemedicaltec.com>                    Wed, Jun 25, 2025 at 2:48 PM
To: Robert Fielitz <robertf@candelamedical.com>

Mr. Fielitz,

There are two important matters in which AE is requesting your intervention.

First, we haven't received an answer from Antonio Zorro's to our previous emails regarding the opportunity to sell two pieces of equipment, a VBeam Pro and a Gmax Pro, to one of AE's clients. Our client is requesting a discount if they buy both equipment. I am attaching the previous emails sent to Antonio Zorro translated in English to help you better understand this important situation which is causing damages to AE's reputation and probably to our business. Second, AE is requesting an explanation on the substantial increase in the cost of the VBeam Pro from $85,000, as listed in January 2025 and the price given in May 2025 of $120,000. Please refer to the two attached emails communications related to the change in price.

We look forward to a prompt response.

Cordially,

Elmer Miranda


Translation of the Email: 05/27/2025

Greetings Antonio,

The proposal for the Vbeam Pro has already been presented to our client, and as I previously informed you, they have also been quoted separately for a Gmax Pro. They want to know as soon as possible how to improve the proposal if they purchase both systems. Let me know what discount you can offer with the order of these two devices. We need to know where the Vbeam Pro will be shipped from. This is very important due to the tariff issue we are considering, and it directly affects costs.

Definitely, if the Vbeam Pro is sold, we will need to train our technical staff, preferably in Spanish.

In addition, since Candela's clinical expert will be needed to come to Puerto RIco to train the dermatologists, this will also affect the costs, so I need to know how long it will take the dermatologists' training. There are currently seven dermatologists in two centers.Finally, we need to know the cost of the preventive maintenance components for the Vbeam Pro device.

This client has been with us since 2007, using Candela hair removal equipment.

I look forward to your response.

Sincerely,

Elmer Miranda


Translation of the Email: 06/17/2025

Good afternoon, Antonio,
I have not received your response since May 27, 2024 on the requested-on prices for the sale of two Candela's devices, as the email attached here in. This delay affects AE Medical's sales of devices in Puerto Rico. Therefore, I request:
First, to know what is happening for the unresponsive to the request, despite the existence of a current exclusive contract between Candela and AE. Second, that you provide the requested information so that we can communicate it to our client. Candela has not been cooperating with AE for some time, and this behavior has increased following an agreement reached in Federal Court under Act 75, a Special Puerto Rico Law that requires the principal to respect, without modifying, distribution contracts in our jurisdiction.
I look forward to a prompt response.
Sincerely,
Elmer Miranda

[Quoted text hidden]

---

**2 attachments**

 **Email 05-27-2025.pdf**
262K

 **Email 01-22-2025.pdf**
576K

## GLX Delivery System

**Antonio Zorro** <antonioz@candelamedical.com>
To: "Elmer Miranda, AE Medical Technologies, Inc." <emiranda@aemedicaltec.com>                                    Wed, Jan 22, 2025 at 2:00 PM

Hola Elmer,

El precio de la pieza de mano GLX son **9900 USD** la primera unidad, y luego tiene un 5% de descuento para la segunda y tercera unidad, un 10% de descuento la cuarta, quinta y sexta y a partir de la séptima tiene un 15% de descuento.

Se puede pedir **DCD o ACC**.

Te mando un enlace con la literatura y si necesitas más te los mando después.

https://assets.mediafly.com/l/C7pRWN4dMNst

Al igual que los equipos pueden tener descuentos por volumen de hasta un 15% durante este año 2025.

Se puede utilizar las siguientes combinaciones de unidades para obtener descuentos en un año determinado:

1. Nordlys family-Matrix

2. GL family

3. Vbeam-Pico

Además si hubiese algún modelo en nuestro inventario de más de un año como son algunos GYAG PRO y PICOWAY tendrán un 5% de descuento adicional o la adquisición de un modelo nuevo que sea lanzado este año 2025.

| | Transfer pri | -5% | -10% | -15% |
| --- | --- | --- | --- | --- |
| | | Units | | |
| **Model** | 1ª | 2ª y 3ª | 4ª,5ª y 6ª | y sucesivas |
| NORDLYS | $ 33,000 | $ 31,350 | $ 29,700 | $ 28,050 |
| NORDLYS Mini | $ 12,000 | $ 11,400 | $ 10,800 | $ 10,200 |
| IPL's Nordlys | $ 3,200 | $ 3,040 | $ 2,880 | $ 2,720 |
| LASERS Nordlys (FRAX, -1K | $ 15,750 | $ 14,963 | $ 14,175 | $ 13,388 |

| | Transfer pri | -5% | -10% | -15% |
| --- | --- | --- | --- | --- |
| | | Units | | |
| **Model** | 1ª | 2ª y 3ª | 4ª,5ª y 6ª | y sucesivas |
| MATRIX PRO | $23,000 | $21,850 | $20,700 | $19,550 |
| APP MATRIX PRO | $12,000 | $11,400 | $10,800 | $10,200 |
| APP MATRIX SUBs | $9,000 | $8,550 | $8,100 | $7,650 |

| | Transfer pri | -5% | -10% | -15% | |
| --- | --- | --- | --- | --- | --- |
| | | Units | | | |
| **Model** | 1ª | 2ª y 3ª | 4ª,5ª y 6ª | y sucesiva | inventory |
| GYAG with medium HP 6-18n | $47,000 | $44,650 | $42,300 | $39,950 | $37,600 |
| GLP with medium HP 6-18mm | $50,000 | $47,500 | $45,000 | $42,500 | |
| GMP with medium HP 6-18mm | $59,000 | $56,050 | $53,100 | $50,150 | |
| GMPP (without HP) | $66,000 | $62,700 | $59,400 | $56,100 | |
| GLX (new standard HP 12-26n | $9,900 | $9,405 | $8,910 | $8,415 | |
| Gentle HP'S (Small,Medium,L | $6,000 | $5,700 | $5,400 | $5,100 | |

| | Transfer pri | -5% | -10% | -15% |
| --- | --- | --- | --- | --- |
| | | Units | | |
| **Model** | 1ª | 2ª y 3ª | 4ª,5ª y 6ª | y sucesivas |
| PICOWAY | $90,000 | $85,500 | $81,000 | $76,500 |
| Picos 730/785 | $15,750 | $14,963 | $14,175 | $13,388 |
| Picos HP's resolve/fusion | $10,500 | $9,975 | $9,450 | $8,925 |

| | Transfer pri | -5% | -10% | -15% |
| --- | --- | --- | --- | --- |
| | | Units | | |
| **Model** | 1ª | 2ª y 3ª | 4ª,5ª y 6ª | y sucesivas |
| VBEAM PERFECT | $60,700 | $57,665 | $54,630 | $51,595 |
| VBEAM PRO (NEW) | $85,000 | $80,750 | $76,500 | $72,250 |

5% extra discount if system is in our inventory for more than 1 year or it is a NPI.

Saludos cordiales,

**Antonio Zorro**

Sr. Service Manager LATAM & Service Training

**CANDELA**

M: +34 661 72 90 83| www.candelamedical.com


Science. Results.Trust.

Follow us on

    

**Disclaimer:** *This e-mail and any attachments are confidential. If you are not a named recipient, please notify the sender immediately and do not disclose the contents to another person, use it for any purpose or store or copy the information in any other medium.*

---

## Candela: AE Medical: GMax Pro Available for Purchase under Agreement

**Rob Blood** <robb@candelamedical.com>                                    Fri, Jun 27, 2025 at 10:03 AM
To: Elmer Miranda <emiranda@aemedicaltec.com>

Dear Elmer –

I am responding to your June 17 email to Antonio Zorro.

First, while Candela is not offering a discounted price on GMax Pro in exchange for purchase of other products, we look forward to you placing an order, or multiple orders, for our GMax Pro device, in compliance with our Distributorship Agreement (the "Agreement").

Second, Candela does not yet have Vbeam Pro commercial units for sale and is not taking pre-orders for distributor markets. If and when such units become available for sale in particular distributor markets, Candela will be reaching out to applicable distributors to discuss such distributors' commercialization plans and forecasts for the device, as well as their other obligations under their agreements applicable to this new device, and then, whether to potentially add the device to such distributors' product lists in their agreements.

It is curious that AE Medical is seeking information on a new Candela device when AE Medical has not complied with the existing Agreement, as provided in Candela's June 16, 2025 letter (the "Letter"), including but not limited to AE Medical's material breaches of essential obligations under the Agreement by failing: to sell and use best efforts regarding Candela's current devices, to provide forecasts, promotional plans, marketing materials and sales and marketing reports, to staff and train clinical trainers for product purchases, to meet service obligations and to reimburse Candela for training-related costs. As provided in the Letter, each of these breaches has had, and continues to have, an

adverse and substantial effect on Candela's interest in promoting, marketing and distributing the Devices and Candela's reputation. Additionally, as stated in the Letter, AE Medical's use of third parties to distribute Candela products and enter into certain financing arrangements with customers in potential violation of the Agreement and applicable law also remains under investigation by Candela.

Third, AE Medical has no basis for claiming that Candela has not cooperated with AE Medical and Candela rejects that allegation in its entirety. As AE Medical knows, Candela consistently has engaged AE Medical regarding its compliance with the Agreement. In fact, it has been AE Medical that repeatedly has refused to discuss the above breaches of our Agreement despite numerous attempts by Candela to do so, constituting, as explained in the Letter, a breach of AE Medical's implied duty of good faith and fair dealing toward Candela. We note that Candela has not modified the Agreement and has at all times complied with the Agreement and applicable law. As such, Candela rejects any imputation by AE Medical of a violation under PR-Act 75, if applicable.

Lastly, as AE Medical knows from our Agreement and the Letter, the Agreement is governed by Massachusetts law and the courts of Massachusetts have exclusive jurisdiction with respect to the Agreement.

If AE Medical wishes to purchase a GMax Pro, please place the order and let us know in detail your plans for staffing and training a clinical trainer to provide training to the customer following installation of such device. We also look forward to receiving AE Medical's explanations of how it intends to rectify each of the breaches as provided in the Letter. Please respond to me directly.

This email is sent without prejudice to Candela's rights, claims, defenses, remedies and/or otherwise, all of which are expressly reserved.

**Robert Blood**

EVP, Chief Legal Officer & General Counsel

**CANDELA**

251 Locke Drive | Marlborough, MA 01752

+1.774.270.4694

# ANEJO 18

---

## Solicitud de Evaluación Urgente – Frecuencia de Averías en Equipos ND Yag

**Sandra Bibiloni** <sandra@aba.pr>                                                                  Thu, Jul 10, 2025 at 4:16 PM
To: Antonio Zorro <antonioz@candelamedical.com>, "Elmer Miranda, AE Medical Technologies, Inc." <emiranda@aemedicaltec.com>

Saludos Sr. Zorro:

Reciba un cordial saludo. Por medio de la presente, deseamos compartir nuestra creciente preocupación respecto al desempeño del equipo Candela. En el último año, hemos observado una alta frecuencia de fallas específicamente en los cabezales láser ND Yag, lo cual ha impactado negativamente nuestras operaciones.

Adjuntamos una tabla que resume únicamente los arreglos realizados al componente ND Yag durante el último año. Esta información no incluye otras reparaciones o mantenimientos del equipo, ya que nuestro interés en este momento es abordar exclusivamente la alta frecuencia de fallos en los cabezales láser. Como se puede observar, la mayoría de las averías están relacionadas con filtraciones o algún tipo de fuga.

Esta situación ha generado un incremento considerable en los costos de mantenimiento, al punto de que la compañía percibe el equipo como una fuente de gastos excesivos. Actualmente, nos vemos en la necesidad de operar con una máquina adicional en cada una de nuestras localidades para mitigar el impacto que ocasiona la recurrencia de estas fallas.

Aunque contamos con el valioso apoyo del representante local de Candela, la demora en la entrega de piezas prolonga el tiempo fuera de servicio de los equipos, lo que repercute directamente en nuestro servicio al cliente y en nuestras ganancias.

Por ello, solicitamos respetuosamente que Candela realice una evaluación de manufactura que nos permita entender la raíz de estas averías y conocer si se están tomando medidas para mejorar la calidad o confiabilidad del equipo. Nuestro compromiso con la excelencia nos impulsa a buscar una solución conjunta que beneficie a ambas partes.

Agradecemos de antemano su pronta atención a este asunto y quedamos atentos a su respuesta.

*Sandra Bibiloni*
Aba Depilación Láser

**aba**
depilaciónláser

--

**Nota de Confidencialidad:**

Este correo electrónico puede contener información confidencial o legalmente privilegiada, la misma es emitida solamente al individuo o entidad a la que se dirige el correo electrónico. Si usted no es el recipiente designado, debe notificarlo de inmediato. La distribución, copia o utilización del contenido está estrictamente prohibido. Si usted recibe este correo por error, por favor devuelva el mismo al remitente, para que ABA BEAUTY LOUNGE realice los arreglos para el envío apropiado del mismo y luego elimine el mensaje de su "Inbox". Gracias.

📄 **Log Averias ND Yag 2024-25.xlsx**
    12K

## AE Medical Replacement Orders

**Rob Blood** <robb@candelamedical.com>                                                    Fri, Jul 11, 2025 at 1:02 PM
To: "Elmer Miranda, AE Medical Technologies, Inc." <emiranda@aemedicaltec.com>

Dear Elmer –

This email is in response to your July 5 email to Antonio Zorro and Jorge Ramos as well as your email to David Rubio yesterday.

We disagree completely with the incorrect statements in your email to Antonio and Jorge. Candela has fulfilled, and continued to fulfill its obligations, under our Distributorship Agreement (the "Agreement").

There is one Candela Device sold to AE Medical that is still under warranty and we have no open warranty claims relating to that Device.

Aside from recent replacement Product orders placed since June 1, 2025 (three of which were just placed in the past week), Candela has shipped all previous replacement Product orders placed by AE Medical.

Regarding replacement Product orders placed since June 1, 2025, order #'s 523395 and 523394 have been approved and are in the process of shipment. AE Medical should receive these items next week.

Order # 529293 (placed on a Saturday just 7 days ago) also has been approved. Unfortunately, Candela is experiencing supply chain shortages beyond Candela's control resulting in delays in obtaining certain replacement Products, including laser heads. As provided under our Agreement, Candela is allocating its limited supply of these replacement Products as they become available across its customer base, including to AE Medical.

Order # 523393 is awaiting a return tracking number from AE Medical. Please send this to me and I will forward to our service team for review.

Order #s 529294 (placed on a Saturday just 7 days ago) and Order # 529863 (received just 4 days ago) have been reviewed and are missing pictures and a detailed description of the parts claimed to be damaged and the inspection and investigation performed by AE Medical. Please send us this information for our review. Please also do not ship any products to Candela unless and until we request AE Medical to do so.

Finally, Order #530247 (placed yesterday) is for an old part no longer in stock and no longer sold or supplied by Candela.

Regarding your email to David Rubio, please explain in detail what the issue is with the customer so that we can evaluate the matter for resolution.

We note that AE Medical recently placed an order for consumables, which Candela fulfilled, demonstrating customers continued successful use of Candela's products.

We remind AE Medical of its repeated breaches of AE Medical's essential and material obligations under the Agreement, as provided in our June 16, 2025 letter, despite multiple prior communications by Candela and which has had, and continues to have, an adverse and substantial effect on Candela's interest in promoting, marketing and distributing the Devices and Candela's reputation, and which constitutes a breach of AE Medical's implied duty of good faith and fair dealing toward Candela.

This email is sent without prejudice to Candela's rights, claims, defenses, remedies and/or otherwise, all of which are expressly reserved.

Please respond to me with the information requested above.

**Robert Blood**

EVP, Chief Legal Officer & General Counsel

**CANDELA**

251 Locke Drive | Marlborough, MA 01752

+1.774.270.4694

robb@candelamedical.com | http://www.candelamedical.com



## Candela: AE Medical: GMax Pro Available for Purchase under Agreement

**Rob Blood** <robb@candelamedical.com>                                          Fri, Jul 11, 2025 at 1:01 PM
To: "Elmer Miranda, AE Medical Technologies, Inc." <emiranda@aemedicaltec.com>

Dear Elmer,

Our June 27 email and June 16 letter (the "Letter") are clear on all these points and our communications have been verified with our business.  The GMax Pro Device has been available to AE Medical, yet AE Medical has refused to place any orders with Candela.

Simply demanding highly discounted products from Candela is not a commercial strategy and woefully fails to meet any of AE Medical's obligations under our Distributorship Agreement (the "Agreement") .  Your conclusory statement that this is a past successful strategy does not pass the straight-face test, as it is completely refuted by the fact that AE Medical has not purchased a single Device since the first quarter of 2024 and the declining year-over-year purchases as explained in the Letter.  Given AE Medical's complete abandonment of sales of Candela Devices and its essential and material obligations under the Agreement, it is patently disingenuous to suggest AE Medical has one potential sale if Candela grossly discounts its products, one of which is not available for commercial production and sale in distributor markets and, when it is, will command a price premium.  Regardless, this point would not address any of the multiple material breaches of AE Medical's essential obligations under our Agreement as detailed in the Letter.

Lastly your statement about Candela's marketing obligations is simply incorrect – there is no such obligation of Candela.  This is AE Medical's essential and material obligation under the Agreement, which it has repeatedly and wholly breached despite multiple prior communications by Candela and which has had, and continues to have, an adverse and substantial effect on Candela's interest in promoting, marketing and distributing the Devices and Candela's reputation, and which constitutes a breach of AE Medical's implied duty of good faith and fair dealing toward Candela.

This email is sent without prejudice to Candela's rights, claims, defenses, remedies and/or otherwise, all of which are expressly reserved.

**Robert Blood**

EVP, Chief Legal Officer & General Counsel

**CANDELA**

251 Locke Drive | Marlborough, MA 01752

+1.774.270.4694

robb@candelamedical.com | http://www.candelamedical.com

